1 | Derek Davis, Esq. (SBN 243957)
Carol A. Treasure, Esq. (SBN 225751)
2 | COOPER & SCULLY, P.C.
100 California Street, Suite 850
3 | San Francisco, CA 94111
Email: derek.davis@cooperscully.com
4 | Email: carol.treasure@cooperscully.com
Tel: (415) 956-9700 / Fax: (415) 391-0274
5 |
Attorneys for Defendants ENNIS INC.
6 | dba ENNIS EMPLOYEE BENEFIT PLAN;
GROUP & PENSION ADMINISTRATORS, INC.,
7 | dba G&P ADMINISTRATORS, INC., ELAP, INC.

8 |              UNITED STATES DISTRICT COURT

9 |            CENTRAL DISTRICT OF CALIFORNIA

10 | TWIN CITIES COMMUNITY HOSPITAL,        Case No. CV11-00113 SVW(VBKx)
INC., a California Corporation,
11 |                                        NOTICE OF REMOVAL
                    Plaintiff,
12 |
                                           Complaint Filed:11/15/10
13 |       vs.

14 | ENNIS INC., doing business as ENNIS INC.
EMPLOYEE BENEFIT PLAN, a Texas
15 | Corporation; GROUP & PENSION
ADMINISTRATORS, INC., doing business as
16 | G&P ADMINISTRATORS, INC, a Texas
Corporation; ELAP, INC., a Pennsylvania
17 | Corporation; and, DOES 1 through 25,
inclusive,
18 |
                    Defendants.

20 |      NOTICE OF REMOVAL TO THE UNITED STATES DISTRICT COURT

21 |     FOR THE CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

22 | To the Honorable Judges of Said Court:

23 |      1.    PLEASE TAKE NOTICE that pursuant to 28 U.S.C. §§ 1441 and 1446,

24 | Defendants, ENNIS INC., d/b/a ENNIS INC. EMPLOYEE BENEFIT PLAN, GROUP &

25 | PENSION ADMINISTRATORS, INC., erroneously sued as dba G&P ADMINISTRATORS,

26 | INC. and ELAP, INC. by their attorneys, hereby remove this action and the related cases from

27 | San Luis Obispo Superior Court to the United States District Court for the Central District of

28 | California. In support of this Notice of Removal, Defendants state as follows:

1
Notice of Removal

D/794593.1

## I. INTRODUCTION

2. On November 15, 2010, a civil action was commenced in the San Louis Obispo Superior Court, San Luis Obispo County, California (1035 Palm Street), by Plaintiff Twin Cities Community Hospital, Inc. That case is presently docketed in the San Louis Obispo state court as Case Number CV108378 and is presently before the Honorable Martin Tangeman, Paso Robles Branch for all purposes. A copy of the Complaint for Damages[1] is attached hereto as **Exhibit 1**.

3. Defendants were served on December 6, 2010. Defendants' Answer was filed on January 4, 2011, and there is a Case Management Conference set for March 28, 2011 in Department 2. No further proceedings are pending at this time.

4. This Notice of Removal is timely filed since it is being filed within 30 days of the date of service as required by 28 U.S.C. § 1446(b). A copy of the Summons is attached hereto as **Exhibit 2**.

5. Venue is proper with the Central District of California under 29 U.S.C. § 1132(e)(2) in that this action is presently pending in the State of California, County of San Luis Obispo, which is within the venue of the United States District Court for the Central District of California.

## II. GROUNDS FOR REMOVAL – DIVERSITY JURISDICTION

6. This action is removable pursuant to 28 U.S.C. § 1441. Plaintiff is a citizen of California. Defendant Ennis, Inc. is a Texas corporation with its principal place of business in Midlothian, Texas. Defendant Group & Pension Administrators, Inc. is a Texas corporation with its principal place of business in Dallas, Texas. Defendant ELAP, Inc. is a Pennsylvania corporation with its principal place of business in Chester Springs, Pennsylvania. There is a complete diversity of citizenship between Plaintiff and Defendants at the time of filing suit and at the time of removal. In its Complaint for Damages, Plaintiff seeks to recover damages of at least $402,138.25. *See* **Exhibit 1**, ¶54, ¶61, ¶70, and ¶86. Accordingly, this Court has original jurisdiction pursuant to 28 U.S.C. § 1332.

---

[1] Defendants did not receive a complete copy of the Complaint until December 21, 2010. The copy of the Complaint that Defendants received with the Summons ended at Page 7 of the Complaint.

D/794593.1

III.    **GROUNDS FOR REMOVAL – FEDERAL QUESTION**

7.    The Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132, *et. seq.* provides for federal jurisdiction where one or all of Plaintiff's claims against Defendant arise under and are within the scope of 29 U.S.C. § 1132(a)(1)(B) and (a)(3), the civil enforcement provisions of the federal statute known as ERISA.  Congress intended for such claims brought in state court to be completely preempted by federal law and tried in the federal courts, and the United States Supreme Court has ruled that ERISA broadly preempts state law claims that relate to ERISA-governed plans. *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 47, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39 (1987).

8.    In its Complaint, Plaintiff Twin Cities Community Hospital, Inc. seeks recovery of benefits for medical services provided to "Patient," who was employed by Defendant Ennis, Inc. and was a participant in the Ennis, Inc. Employee Benefit Plan ("the Plan"). *See* **Exhibit 1,** ¶11. The Plan provided by Ennis, Inc. for its employees is an employee benefit plan, as defined in 29 U.S.C. § 1002(1) & (3).  The Plan is established or maintained by an "employer" or "employee organization," and, therefore, is subject to the provisions of ERISA.

9.    The gist of Plaintiff's allegations is the following:

> On or about March 31, 2009, Ennis acknowledged its obligations to pay the Hospital for the medical services provided to the Patient by paying through GPA a portion of the amount owed totaling $81,582.02, but denied payment for the additional amount as a result of a unilateral audit GPA and/or ELAP had performed that disallowed certain charges.  The Patient was responsible for $1,329.35, leaving an unpaid balance of $183,865.47 Ennis is required to pay to the Hospital.

> On or around May 21, 2009, the Hospital sent a written appeal to GPA, informing GPA that its unilateral audit was in breach of the Agreement and $183,865.47 was still owed to the Hospital.  Despite this information, the Hospital's appeal was denied on June 19, 2009. (*See* **Exhibit 1,** ¶16-17).

10.    Defendant ELAP, Inc., pursuant to the Plan Document, has been allocated certain fiduciary responsibilities.  Specifically, the Plan Document states the following:

> Notwithstanding any provisions of this Plan Document and Summary Plan Description to the contrary, the Plan Sponsor has the authority to, and hereby does, allocate certain fiduciary responsibility to ELAP, Inc. *(the "Designated Decision Maker").*  The fiduciary responsibility allocated to the DDM is limited to discretionary authority and ultimate decision-

3

D/794593.1

1   making authority with respect to any appeals of denied claims, which shall
2   be referred to the DDM by the Plan Administrator (the "Referred Appeals"). The Plan Sponsor has allocated additional fiduciary responsibility to the DDM, limited to discretionary authority and ultimate decision-making authority with respect to the review and audit of certain claims in accordance with the applicable Plan provisions under the section, "Claim Review and Audit Program." *See* **Exhibit 3**, Page 4.

5       11.    Plaintiff Twin Cities Community Hospital, Inc.'s state law claims relate to, and are

6   made in connection with, or reference to the ERISA plan, and are, therefore, within the scope

7   ERISA's civil enforcement scheme. 29 U.S.C. 1132(a). Plaintiff's state law claims are therefore

8   completely preempted pursuant to ERISA and removable pursuant to 28 U.S.C. 1441(b). *See*

9   *Aetna Health Inc. v. Davila*, 542 U.S. 200, 221, 124 S. Ct. 2488, 2502, 159 L. Ed. 2d 312, 335

10  (2004).

11      12.    Complete preemption of state law by a federal statute provides exclusive federal

12  question jurisdiction. *Hall v. North American Van Lines, Inc.*, 476 F.3d 683, 687-688 (9th Cir.

13  2007). The test for complete preemption is "whether Congress clearly manifested an intent to

14  convert state law claims into federal question claims." *Ansley v. Ameriquest Mortgage Co.*, 340

15  F.3d 858, 862 (9th Cir. 2003).

16      13.    Congress intended for all claims that "relate to" an employee benefit plan under

17  ERISA brought in state court to be completely preempted by federal law and tried in the federal

18  courts. *See Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 107 S. Ct. 1542, 171 L. Ed. 2d 299

19  (1987) (holding that state contract and tort claims for improper processing of disability claim and

20  wrongful termination were completely preempted by and within civil enforcement provisions of

21  ERISA). Further, the United States Supreme Court held that complete preemption occurs if the

22  state law claims seek to remedy the denial of benefits under an ERISA-regulated benefit plan.

23  *Davila*, supra, 542 U.S. at 221, 124 S. Ct. at 2502, 159 L. Ed. 2d (2004).

24      14.    An action may be removed if the real nature of the claim asserted in the complaint

25  is essentially federal in nature, such as when state causes of action are completely preempted by

26  ERISA. *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 46-48, 107 S. Ct. 1549, 1552-1553, 95

27  L.Ed. 2d 39, 47-48 (1987) (ERISA preempts employee's state common law action against

28  insurer for alleged improper processing of claims for benefits under ERISA plan).

D/794593.1

15.   The District Court has original jurisdiction over the claims asserted against Defendants in this action under 29 U.S.C. § 1132(e)(1) and Defendants may remove the action under 28 U.S.C. § 1441(b) in that this action is one arising under the provisions of ERISA.

16.   Defendants file this Notice of Removal without waiving, and specifically reserving all objections and defenses which they may have under Rule 12(b) of the Federal Rules of Civil Procedure and any other rules applicable to this motion.

17.   Written notice of this Notice of Removal is being immediately provided to the San Louis Obispo Superior Court. *See* **Exhibit 4**.

18.   Written notice of this Notice of Removal of this action is being caused to be served on counsel for Plaintiff.

19.   WHEREFORE, Defendants pray that the above action now pending against it in the Superior Court of California be removed therefrom to this United States District Court for the Central District of California, Western Division.

Dated: January 4, 2011

COOPER & SCULLY, P.C.

By _____
DEREK DAVIS
CAROL A. TREASURE
Attorneys for Defendants ENNIS INC.
dba ENNIS EMPLOYEE BENEFIT PLAN;
GROUP & PENSION
ADMINISTRATORS, INC., dba G& P
ADMINISTRATORS, INC., ELAP, INC.

D/794593.1

# Exhibit "1"

**HELTON LAW GROUP**
A PROFESSIONAL CORPORATION
CARRIE S. MCLAIN (State Bar No. 181674)
KELLY A. MAHONEY (State Bar No. 246540)
ATTORNEYS AT LAW
401 East Ocean Boulevard, Suite 1010
Long Beach, California 90802
TELEPHONE: (562) 901-4499
FACSIMILE: (562) 901-4488

ATTORNEYS FOR PLAINTIFF TWIN CITIES COMMUNITY HOSPITAL, INC.

**FILED**

NOV 15 2010

SAN LUIS OBISPO SUPERIOR COURT
BY _____
B. Keene, Deputy Clerk

NOV 15 2010

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF SAN LUIS OBISPO**

| | |
|---|---|
| TWIN CITIES COMMUNITY HOSPITAL, INC., a California Corporation, <br><br> Plaintiff, <br><br> vs. <br><br> ENNIS, INC. doing business as ENNIS INC. EMPLOYEE BENEFIT PLAN, a Texas Corporation; GROUP & PENSION ADMINISTRATORS, INC. doing business as G&P ADMINISTRATORS, INC. a Texas Corporation; ELAP, INC. a Pennsylvania Corporation; and, DOES 1 through 25, inclusive, <br><br> Defendants. | Case No: CV 108378 <br><br> ASSIGNED TO: <br><br> UNLIMITED - DAMAGES IN EXCESS OF $25,000 <br><br> **COMPLAINT FOR DAMAGES FOR:** <br><br> 1. **BREACH OF WRITTEN CONTRACT** <br> 2. **BREACH OF IMPLIED CONTRACT** <br> 3. **BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING** <br> 4. **NEGLIGENT MISREPRESENTATION** <br> 5. **QUANTUM MERUIT** <br> 6. **ACCOUNT STATED** <br> 7. **NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS** <br> 8. **ECONOMIC INTERFERENCE – INDUCING BREACH OF CONTRACT** |

TO ALL INTERESTED PARTIES AND THEIR ATTORNEYS OF RECORD:

**GENERAL ALLEGATIONS**

1.    Plaintiff TWIN CITIES COMMUNITY HOSPITAL, INC. is a California corporation, with its principal place of business in the County of San Luis Obispo, in the State of California. The HOSPITAL is a California licensed acute-care hospital located in the City of Templeton.

COMPLAINT FOR DAMAGES

2.    The Hospital is informed and believes Defendant ENNIS, INC. doing business as ENNIS, INC. EMPLOYEE BENEFIT PLAN ("Ennis") is a Texas Corporation doing business in the State of California.

3.    The Hospital is informed and believes Defendant GROUP & PENSION ADMINISTRATORS, INC. doing business as G&P ADMINISTRATORS, INC. ("GPA") is a Texas Corporation doing business in the State of California.

4.    The Hospital is informed and believes Defendant ELAP, INC. ("ELAP") is a Pennsylvania Corporation doing business in the State of California.

5.    Plaintiff Hospital is unaware of the true names, identities, and capacities of Defendants sued herein as Does 1 through 25, inclusive, and each of them as based thereon, sues said Defendants by such fictitious names. When their true names and capacities are ascertained, Plaintiff will amend this complaint by inserting their true names and capacities herein. The Hospital is informed and believes and thereon alleges that each of the fictitiously named defendants is responsible in some manner for the occurrences alleged herein, and that the Hospital's damages as alleged herein were proximately caused by those defendants.

6.    The Hospital is informed and believes and thereon alleges that at all times mentioned herein, each of the Defendants (with the exception of ELAP, Inc.), including all Defendants sued under fictitious names, were the agent and/or employee of each of the remaining Defendants, and in so doing the things alleged herein, were acting within the scope of his or her agency and employment.

## SPECIFIC ALLEGATIONS AS TO THE PATIENT

7.    The Hospital entered into the Participating Hospital Agreement (the "Agreement") effective on or about February 1, 2008 with Coventry Health Care Network, Inc. ("Coventry") and Coventry Companies to provide hospital services to Coventry Products.   Coventry is in the business of entering into contracts with providers such as the Hospital on behalf of Payors. The Agreement defines "Payor" as an entity authorized by Coventry or a Coventry Company to access one or more networks of Participating Providers (such as the Hospital) and who or which is financially liable to pay for hospital services rendered to a member. Further, Payors are required to abide by all the terms

///

2

COMPLAINT FOR DAMAGES

1   of the Agreement.    Due to confidentiality concerns, the Agreement will be made available at
2   Defendants' request.

3        8.    The Agreement requires the Hospital to agree to participate in two categories of
4   products: 1) "Coventry Products" and 2) "First Health Products."    First Health Products are further
5   defined as including a Network Lease product which includes Third Party Administrators, large
6   employers, or insurance carriers who are interested in securing access to Coventry Company
7   networks.

8        9.    Ennis is a Payor as defined in the Agreement and pursuant to the Agreement is required
9   to abide by all the terms of the Agreement.   Hospital is informed and believes Ennis entered into an
10  agreement with First Health and/or Coventry in order to gain access to the discounted rates in the
11  Agreement.

12       10.    Pursuant to the terms of the Agreement, the Hospital is obligated to provide hospital
13  services at discounted rates to Ennis employees.   In turn, Ennis is obligated to comply with the terms
14  of the Agreement, including reimbursing the Hospital for such Hospital services.

15       11.    From January 18, 2009 through February 4, 2009, the Hospital provided the Patient
16  with treatment for medically necessary and physician ordered medical services.    Plaintiff is
17  withholding the full name of the Patient in this Complaint to preserve the Patient's protected rights to
18  privacy concerning health care information.   The Patient's medical and claims information has been
19  and will be made available to Defendant upon request.

20       12.    Upon admission, the Patient presented an insurance card that showed she had health
21  insurance through her employer, Ennis, who had contracted with First Health to obtain access to
22  discounted rates contracted between the Hospital and First Health.

23       13.    The Patient's insurance card indicated that GPA was the entity for the Hospital to call
24  and obtain eligibility and benefits information on the Patient.   The Hospital is informed and believes
25  that Ennis and GPA have entered into a contract whereby GPA administers Ennis' benefit plan
26  including making eligibility and benefit determinations and payment of claims in conformance with
27  the Agreement.   The Hospital is further informed and believes that GPA acts as Ennis' agent in
28  regards to the administration of Ennis' benefit plan.   The Hospital is further informed and believes

1  that Ennis and/or GPA on Ennis' behalf entered into a written contract with ELAP thereby delegating

2  certain claims processing functions to ELAP.

3      14.    From January 18, 2009 through January 20, 2009, the Hospital made numerous

4  attempts to speak with someone at GPA; however, On January 20, 2009, the Hospital spoke with

5  Lindsey and Denise from GPA. Both confirmed the Patient's eligibility and benefits. Later on

6  January 20, 2009, Melissa from GPA provided treatment authorization number 0207449 for the

7  Patient's hospitalization. The Patient was discharged on February 4, 2009.

8      15.    On February 9, 2009, the Hospital submitted its bill to GPA per instructions from

9  Ennis to do so for total charges in the amount of $485,050.62. Under the Agreement's discounted

10  reimbursement rate, the Hospital expected reimbursement from Ennis in the amount of $266,777.84.

11      16.    On or about March 31, 2009, Ennis acknowledged its obligations to pay the Hospital

12  for the medical services provided to the Patient by paying through GPA a portion of the amount owed

13  totaling $81,583.02, but denied payment for the additional amount as a result of a unilateral audit

14  GPA and/or ELAP had performed that disallowed certain charges. The Patient was responsible for

15  $1,329.35, leaving an unpaid balance of $183,865.47 Ennis is required to pay to the Hospital.

16      17.    On May 21, 2009, the Hospital sent a written appeal to GPA, informing GPA that its

17  unilateral audit was in breach of the Agreement and $183,865.47 was still owed to the Hospital.

18  Despite this information, the Hospital's appeal was denied on June 19, 2009.

19      18.    On or around January 11, 2010, counsel for the Hospital sent a letter to Ennis through

20  its agent GPA and First Health demanding that Ennis through its agent GPA and First Health honor

21  the Agreement and pay the additional $183,865.47. Ennis and/or GPA did not respond to this letter.

22  First Health did respond to the letter and agreed to send a letter to GPA and Ennis demanding they pay

23  the additional $183,865.47.

24      19.    On or around January 21, 2010, counsel for First Health sent a letter to GPA and Ennis

25  informing them that its audit was in violation of the payor agreement between First Health and Ennis

26  dated January 1, 2008 whereby Ennis agreed not to audit or reduce the Hospital's billed charges based

27  on usual and customary, "excessive markup", or other similar bill reduction methodology. The letter

28  further stated that GPA and/or Ennis was to pay the Hospital the $183,865.47 and that should

4

1  GPA/Ennis refuse to make payment, the Hospital would be under no obligation to accept the

2  discounted rate under the terms of the Agreement.

3        20.    To date, Defendants have failed to make any further payments.

4        21.    On or about June 19, 2009, Defendants breached the Agreement with respect to the

5  Patient by refusing to pay the full amount due under the terms of the Agreement despite repeated

6  appeals by the Hospital to Defendants for further payment.

## FIRST CAUSE OF ACTION

## BREACH OF CONTRACT

## (AS TO DEFENDANTS ENNIS AND DOES 1-25)

10        22.    Plaintiff re-alleges and incorporates herein by reference each and every allegation set

11  forth above.

12        23.    At the time the Patient was admitted to the Hospital on January 18, 2009, the

13  Agreement between First Health and Twin Cities Community Hospital was in place and Ennis was

14  obligated to make payment in accordance with its terms as a payor thereto. The Agreement provides

15  for various payment schedules and discounts depending upon the type of medical goods and services

16  provided to the Patient by the Hospital.

17        24.    The Hospital submitted its claim to Ennis through its agent GPA for the care and

18  treatment provided to the Patient. The Hospital expected reimbursement in the amount of $266,777.84

19  pursuant to the terms of the Agreement.

20        25.    However, Defendants breached the Agreement by incorrectly adjusting the payment

21  and thereby underpaying the claim in the amount of $183,865.47.

22        26.    As a result of this breach under the Agreement, the Defendants are no longer entitled to

23  pay the discounted rates contained therein.

24        27.    The Hospital performed all its obligations under the Agreement, including notifying

25  Ennis through its agent GPA of the admission of the Patient and supplying full documentation to

26  Defendants for the health care services and products it provided to the Patient.

27  ///

28  ///

28. As a result of Defendants' failure to fulfill its contractual obligations in a reasonable, timely or competent manner, the Hospital has not been fully compensated for the significant health care services it provided to the Patient and has suffered damages as a result.

29. The Hospital has attempted to resolve the dispute concerning the claim for the Patient several times. Such attempts have been to no avail.

## SECOND CAUSE OF ACTION

### BREACH OF IMPLIED CONTRACT

### (AS TO DEFENDANTS ENNIS AND DOES 1-25)

30. Plaintiff re-alleges and incorporates herein by reference each and every allegation set forth above.

31. As alleged above, the Hospital believes it is entitled to full and complete payment from Ennis and/or Ennis' agent GPA in accordance with the contract set forth above. However, to the extent the contract alleged above does not apply and/or is deemed unenforceable against Ennis and/or GPA for any of the services at issue, and absent any other legally controlling rate, the Hospital alleges in the alternative that Ennis and/or GPA owes the Hospital for these services pursuant to an implied contract.

32. On January 20, 2009, the Hospital contacted Ennis through its agent GPA, and spoke with Lindsey and Denise from GPA. Both confirmed the Patient's eligibility and benefits. Later on January 20, 2009, Melissa from GPA provided treatment authorization number 0207449 for the Patient's hospitalization.

33. At no time during the Hospital's care and treatment of Patient did Ennis or GPA assert that Patient was not its insured, or indicate in any way to the Hospital that it would not cover Patient's medical expenses incurred by the Hospital.

34. Said verification and authorization by Ennis through its agent GPA induced the Hospital to provide, or continue providing, care to Patient. Once Hospital acted in reliance on GPA's verification and authorization, a mutual agreement between Ennis through its agent GPA and the Hospital was formed, the terms of which were that the Hospital would care for and treat Patient, and in exchange, Ennis would cover the expenses incurred in such care and treatment.

6

35.   By providing the verification of benefits and authorization to the Hospital, Ennis through its agent, GPA, promised to pay and the Hospital relied on such promise for payment of the expenses incurred by the Hospital in its care and treatment of Patient.

36.   The Hospital performed all its obligations under its implied contract with Ennis, in that it cared for and treated Patient to the best of the Hospital's ability.

37.   Ennis, through is agent GPA, breached its implied contract with the Hospital on April 16, 2009 by issuing payment for $81,583.02 and refusing to fully pay the Hospital's claim for the charges incurred in providing medical services to Patient when it denied the Hospital's written appeal. By submitting partial reimbursement, Ennis, through it agent GPA, acknowledged its obligations to pay for the medical services provided by Hospital to Patient.

38.   As a result of Ennis' failure to fulfill its contractual obligations in a reasonable, timely or competent manner, the Hospital was not fully compensated for the significant health care services it provided to Patient and thus has been damaged in an amount to be proven at trial.

### THIRD CAUSE OF ACTION

### BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

### (AS TO DEFENDANTS ENNIS AND DOES 1-25)

39.   Plaintiff re-alleges and incorporates herein by reference each and every allegation set forth above.

40.   California law implies a covenant of good faith and fair dealing in all contracts between parties entered into in the State of California.

41.   At the time the Hospital submitted its bills to the Defendants for the medically necessary treatment and services it provided the Patient, the Agreement between the Hospital and the Defendants through First Health was in effect. The implied contract with Ennis was also in effect.

42.   The Hospital provided medically necessary care and treatment to the Patient during the hospitalization and met its obligations under the Agreement and the implied contract including timely submitting its bills to the Defendants for the services rendered to the Patient.

43.   All the conditions required under the Agreement and the implied contract for the Defendants to fully reimburse the Hospital occurred.

44.    The Defendants unfairly interfered with the Hospital's right to receive the benefits of the Agreement and implied contract by failing to pay the Hospital the amount required by the Agreement after the Hospital provided medically necessary services to the Patients and billed the Defendants for those services.

45.    The Hospital was harmed by the Defendants' conduct in an amount to be proven at trial and attorneys fees under the contract.

## FOURTH CAUSE OF ACTION

### NEGLIGENT MISREPRESENTATION

### (AS TO DEFENDANTS ENNIS AND GPA AND DOES 1-25)

46.    Plaintiff re-alleges and incorporates herein by reference each and every allegation set forth above.

47.    At the time the Patient was admitted to the Hospital, the Patient was a beneficiary of Ennis and its agent GPA.

48.    At the time and during the Patient's admission, the Hospital contacted Ennis through its agent GPA who verified the Patient's benefits and authorized the Hospital's treatment.

49.    From January 18, 2009 until February 4, 2009, the Hospital provided the Patient with treatment for medically necessary and physician ordered medical services.

50.    This verification of the Patient's eligibility and benefits by Ennis through GPA was a representation that Ennis and/or GPA would cover the Patient's care and treatment for the subject admission, and this representation was not true.  Ennis and/or GPA did not intend to cover the Patient's care and treatment for the subject admission.  The verification provided by Ennis through its agent GPA's was made with no reasonable ground for believing that Ennis and/or GPA would cover such care and treatment even though the Patient had health insurance benefits with Ennis and/or GPA.

51.    Ennis through its agent GPA verified the Patient's eligibility and benefits with the intent that the Hospital should rely on such verification.  Ennis and/or GPA knew that it would not cover the Hospital's care and treatment of the Patient.

52.    The Hospital relied on Ennis and/or GPA's verification.

///

1    53.      The total charges incurred during the Patient's stay were $485,050.62. Ennis and/or

2    GPA has only reimbursed the Hospital $81,583.02 for these charges and designated $1,329.35 patient

3    responsibility.

4    54.      As a result of the benefit conferred upon Ennis and/or GPA by the Hospital, the

5    Hospital is entitled to damages for negligent misrepresentation in the amount of $485,050.62 less the

6    $81,583.02 paid by Ennis and the $1,329.35 paid by the patient, for a total of $402,138.25.

7    55.      As a result of Defendants' negligent misrepresentation, the Hospital was not fully

8    compensated for the significant health care services it provided to the Patient.

9                              **FIFTH CAUSE OF ACTION**

10                                **QUANTUM MERUIT**

11                    **(AS TO DEFENDANTS ENNIS AND GPA AND DOES 1-25)**

12    56.      Plaintiff re-alleges and incorporates herein by reference each and every allegation set

13    forth above.

14    57.      By verifying the Patient's benefits with the Hospital and thereby representing to the

15    Hospital that it should care for and treat the Patient as medically necessary, Ennis and/or GPA both

16    expressly and impliedly requested that the Hospital provide care and treatment to the Patient.

17    58.      As a result, the Hospital did indeed provide medical care and treatment to the Patient to

18    the best of the Hospital's ability.

19    59.      The Hospital's provision of medical care and treatment to the Patient was intended to

20    and, in fact, benefited Ennis and/or GPA in that the Patient received medical care and treatment which

21    Ennis was obliged to provide to the Patient.

22    60.      The total charges incurred during the Patient's stay were $485,050.62. Ennis through

23    its agent GPA has only reimbursed the Hospital $81,583.02 for these charges.

24    61.      As a result of the benefit conferred upon Ennis and/or GPA by the Hospital, the

25    Hospital is entitled to quantum meruit damages in the amount of $485,050.62 less the $81,583.02 paid

26    by Ennis and the $1,329.35 paid by the patient, for a total balance due of $402,138.25.

27    62.      The Hospital was not fully compensated for the significant health care services it

28    provided to the Patient.

# SIXTH CAUSE OF ACTION

## ACCOUNT STATED

### (AS TO DEFENDANTS ENNIS AND DOES 1-25)

63.     Plaintiff re-alleges and incorporates herein by reference each and every allegation set forth above.

64.     As alleged above, the Hospital believes it is entitled to full and complete payment from Ennis and/or GPA in accordance with the contract set forth above. However, to the extent the contract alleged above does not apply and/or is deemed unenforceable against Ennis for any of the services at issue, and absent any other legally controlling rate, the Hospital alleges in the alternative that Ennis owes the Hospital for these services pursuant to an account stated.

65.     In the ordinary course of business, the Hospital sent invoices for the services at issue to the place that Ennis directed the Hospital to send those bills. The bills are commonly referred to as UB-92's, or UB-04's, based on the form originated by the Medicare program, and now used routinely by all providers and payors, for stating bills. The amounts stated on these bills by the Hospital are the billed charges for the services, which also is industry standard practice. When there is a contract providing for a discounted rate, the payor can reprice the claim at the contract rate, instead of the billed charges rate. There is no such discount contract rate in place between the parties in this dispute, thus billed charges are required to be paid by Ennis.

66.     Plaintiff submitted either appeal correspondence and/or spreadsheets regarding the disputed accounts.

67.     At all times herein mentioned the Hospital provided medically necessary services to Ennis' beneficiary. Accordingly, Ennis became indebted to the Hospital in the amount set forth in the account stated, plus interest.

68.     Ennis acknowledged its obligation to pay the Hospital by making a partial payment in the amount $81,583.02.

69.     The Hospital and Ennis, through it agent GPA, engaged in a previous financial transaction whereby the Hospital provided medical services to Ennis' member and billed Ennis though its agent, GPA, for those services.

COMPLAINT FOR DAMAGES

70.     As part industry custom and past-practices, the Hospital and Ennis agreed that if no contract is applicable to this dispute, full billed charges are owed in the amount of $402,138.25.

71.     As part of industry custom and past practices, Ennis promised to pay full billed charges in the amount $402,138.25 to the Hospital should no contract be found applicable to this dispute.

72.     Ennis has not paid the Hospital $402,138.25 under this account.

73.     Ennis owes the Hospital $402,138.25 plus interest.

<u>**SEVENTH CAUSE OF ACTION**</u>

**NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS**

**(AS TO DEFENDANTS ELAP AND DOES 1-25)**

74.     Plaintiff re-alleges and incorporates by reference each and every allegation set forth above.

75.     On or about March 11, 2009 and June 19, 2009, Ennis through its agent GPA informed the Hospital that it sent the Hospital's bill to a third-party entity, ELAP, for review. Plaintiff is informed and believes ELAP provides business advisory services for the health care industry. ELAP performed an audit of the charges on the Hospital's bill in violation of the Agreement and determined $402,138.24 in charges was non-billable. Ennis decided it would reimburse the Hospital based on the difference between the full billed charges and the audit amount instead of based on the Agreement that Ennis was required to base its payment on.

76.     ELAP negligently interfered with the relationship between the Hospital and Ennis that would have resulted in an economic benefit to the Hospital.

77.     The Hospital and Ennis were in an economic relationship as described above that would have resulted in a future economic benefit to Hospital, specifically the timely payment of the Hospital's claim for providing services to the Patient pursuant to the Agreement.

78.     ELAP knew or should have known of this relationship between the Hospital and Ennis and knew or should have known that this relationship would be disrupted if they failed to act with reasonable care.

///

79.     ELAP failed to act with reasonable care and engaged in wrongful conduct through performing an improper audit, negligently determining the value of the Hospital's services provided to the Patient and disregarding the Hospital's Agreement with Ennis which prohibited such determinations.

80.     As a result of ELAP's actions, the relationship between the Hospital and Ennis has been disrupted and the Hospital has been harmed by Ennis' failure to reimburse the Hospital at the agreed upon rates. ELAP's wrongful conduct was a substantial factor in causing the Hospital's harm.

## EIGHTH CAUSE OF ACTION

### ECONOMIC INTERFERENCE -- INDUCING BREACH OF CONTRACT

### (AS TO DEFENDANTS ELAP AND DOES 1-25)

81.     Plaintiff re-alleges and incorporates by reference each and every allegation set forth above.

82.     The Hospital claims ELAP intentionally caused Ennis to breach its written contract with the Hospital.

83.     Plaintiff and Ennis entered into an Agreement through First Health as alleged above prior to services being provided to the Patient and the contract was in effect during all relevant dates of service.

84.     ELAP knew of the contract between the Hospital and Ennis yet performed the audit of the Hospital's bill in breach of said Agreement and reported to Ennis and/or GPA the amount they determined Ennis owed the Hospital despite knowing Ennis had contracted with the Hospital to pay the discounted rates contained in the Agreement for the services provided to the Patient.

85.     ELAP's audit and report to Ennis and/or GPA as to the reimbursement determination, which was not in compliance with the terms of the Agreement, caused Ennis to breach the written contract.

86.     The Hospital was harmed by ELAP's inducement of breach of contract and is owed an additional $402,138.25, plus interest as contractual damages for Ennis' breach.

87.     ELAP's conduct was a substantial factor in causing the Hospital's damages.

///

1

### PRAYER FOR RELIEF

2       WHEREFORE, Plaintiff TWIN CITIES COMMUNITY HOSPITAL, INC. prays for relief as

3   to the Patient:

1.   4               1.        For damages in an amount according to proof at trial;

2.   5               2.        For pre-judgment interest as provided by law;

3.   6               3.        For punitive damages as provided by law;

4.   7               4.        For attorneys fees as provided for by the contract and by law;

5.   8               5.        For costs of suit herein incurred; and

6.   9               6.        For such other and further relief as the Court deems just and proper.

10   DATED:  November 11, 2010                    HELTON LAW GROUP

11                                                A Professional Corporation

12

13                                          By:  _Kelly Mahoney_____

14                                               CARRIE S. MCLAIN

15                                               KELLY A. MAHONEY

                                                 Attorneys for Plaintiff

16                                               TWIN CITIES COMMUNITY HOSPITAL, INC.

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit "2"

562 901 4488          HELTON LAW GROUP                                    ...39:06 p.m.      12-21-2010          8 /23

SUM-100

## SUMMONS
### (CITACION JUDICIAL)

| | |
|---|---|
| | *FOR COURT USE ONLY*<br>*(SOLO PARA USO DE LA CORTE)* |

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
ENNIS, INC. doing business as ENNIS INC. EMPLOYEE BENEFIT PLAN, a Texas
Corporation; GROUP & PENSION ADMINISTRATORS, INC. doing business as G&P
ADMINISTRATORS, INC. a Texas Corporation; ELAP, INC. a Pennsylvania Corporation; and,
DOES 1 through 25, inclusive,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
TWIN CITIES COMMUNITY HOSPITAL, INC., a California Corporation,

**FILED**

**NOV 15 2010**

SAN LUIS OBISPO SUPERIOR COURT
BY _____
B Keene, Deputy Clerk

NOV 1 5 2010

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* | CASE NUMBER<br>*(Número del Caso):* **CV 0 8 3 7 8** |
|---|---|

SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN LUIS OBISPO
Courthouse Annex, 1035 Palm Street #385, San Luis Obispo, CA, 93408

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
CARRIE S. McLAIN (SBN 181674) / KELLY A. MAHONEY (SBN 246540)     Fax No.: (562) 901-4488
HELTON LAW GROUP, P.C., 401 E. OCEAN BLVD., STE 1010, LONG BEACH, CA 90802   Phone No.: (562) 901-4499

| DATE:<br>*(Fecha)* | 11-15-10 | Clerk, by<br>*(Secretario)* | SUSAN MATHERLY | , Deputy<br>*(Adjunto)* |
|---|---|---|---|---|
| | | | *S/ B. KEENE* | |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)         ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

[SEAL]

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>www.courtinfo.ca.gov<br>*LexisNexis® Automated California Judicial Council Forms* |
|---|---|---|

562 901 4488        HELTON LAW GROUP                            12:40:14 p.m.    12-21-2010        9/23

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| CARRIE S. MCLAIN (SBN 181674) / KELLY A. MAHONEY (SBN 246540)<br>HELTON LAW GROUP, P.C.<br>401 EAST OCEAN BLVD., STE 1010, LONG BEACH , CA  90802<br>TELEPHONE NO.: (562) 901-4499    FAX NO.: (562) 901-4488<br>ATTORNEY FOR *(Name):* TWIN CITIES COMMUNITY HOSPITAL, INC. | **FILED**<br>**NOV 15 2010**<br>SAN LUIS OBISPO SUPERIOR COURT<br>BY _____ D. Keene<br>B Keene, Deputy Clerk |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Luis Obispo
STREET ADDRESS: 1035 Palm Street #385
MAILING ADDRESS: SAME
CITY AND ZIP CODE: San Luis Obispo, CA 93408
BRANCH NAME: Courthouse Annex

CASE NAME:    TWIN CITIES COMMUNITY HOSPITAL, INC. V. ENNIS, INC., ET AL.

| CIVIL CASE COVER SHEET<br>[X] Unlimited      [ ] Limited<br>(Amount              (Amount<br>demanded          demanded is<br>exceeds $25,000)  $25,000 or less) | Complex Case Designation<br>[ ] Counter    [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | CASE NUMBER:<br>**108378**<br>JUDGE:<br>DEPT: |
|---|---|---|

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation<br>(Cal. Rules of Court, rules 3.400–3.403) |
|---|---|---|
| [ ] Auto (22) | [ ] Breach of contract/warranty (06) | [ ] Antitrust/Trade regulation (03) |
| [ ] Uninsured motorist (46) | [ ] Collections (09) | [ ] Construction defect (10) |
| **Other PI/PD/WD (Personal Injury/Property** | [ ] Insurance coverage (18) | [ ] Mass tort (40) |
| **Damage/Wrongful Death) Tort** | [X] Other contract (37) | [ ] Securities litigation (28) |
| [ ] Asbestos (04) | **Real Property** | [ ] Environmental/Toxic tort (30) |
| [ ] Product liability (24) | [ ] Eminent domain/Inverse | [ ] Insurance coverage claims arising from the |
| [ ] Medical malpractice (45) | condemnation (14) | above listed provisionally complex case |
| [ ] Other PI/PD/WD (23) | [ ] Wrongful eviction (33) | types (41) |
| **Non-PI/PD/WD (Other) Tort** | [ ] Other real property (26) | **Enforcement of Judgment** |
| [ ] Business tort/unfair business practice (07) | **Unlawful Detainer** | [ ] Enforcement of judgment (20) |
| [ ] Civil rights (08) | [ ] Commercial (31) | **Miscellaneous Civil Complaint** |
| [ ] Defamation (13) | [ ] Residential (32) | [ ] RICO (27) |
| [ ] Fraud (16) | [ ] Drugs (38) | [ ] Other complaint *(not specified above)* (42) |
| [ ] Intellectual property (19) | **Judicial Review** | **Miscellaneous Civil Petition** |
| [ ] Professional negligence (25) | [ ] Asset forfeiture (05) | [ ] Partnership and corporate governance (21) |
| [ ] Other non-PI/PD/WD tort (35) | [ ] Petition re: arbitration award (11) | [ ] Other petition *(not specified above)* (43) |
| **Employment** | [ ] Writ of mandate (02) | |
| [ ] Wrongful termination (36) | [ ] Other judicial review (39) | |
| [ ] Other employment (15) | | |

2. This case [ ] is   [X] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties          d. [ ] Large number of witnesses
   b. [ ] Extensive motion practice raising difficult or novel    e. [ ] Coordination with related actions pending in one or more courts
          issues that will be time-consuming to resolve                 in other counties, states, or countries, or in a federal court
   c. [ ] Substantial amount of documentary evidence             f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [X] monetary   b. [ ] nonmonetary; declaratory or injunctive relief   c. [ ] punitive
4. Number of causes of action *(specify):*
5. This case [ ] is   [X] is not   a class action suit.
6. This case [ ] is   [X] is not   a collections case under rule 3.740.
7. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: November 11, 2010

KELLY A. MAHONEY                                      *Kelly Mahoney*
_____          _____
(TYPE OR PRINT NAME)                                 (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a complex case, or a collections case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 3.220, 3.400–3.403;
Standards of Judicial Administration, § 19
www.courtinfo.ca.gov
*LexisNexis® Automated California Judicial Council Forms*

562 901 4488          HELTON LAW GROUP                    12:41:14 p.m.     12-21-2010      10 /23

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the primary cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Collections Cases.** A "collections case" is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a collections case on this form means that it will be exempt from the general time for service requirements and case management rules, unless a defendant files a responsive pleading. A collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

## CASE TYPES AND EXAMPLES

**Auto Tort**
   Auto (22)–Personal Injury/Property
      Damage/Wrongful Death
   Uninsured Motorist (46) (*if the
      case involves an uninsured
      motorist claim subject to
      arbitration, check this item
      instead of Auto*)
**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
   Asbestos (04)
      Asbestos Property Damage
      Asbestos Personal Injury/
         Wrongful Death
   Product Liability (*not asbestos or
      toxic/environmental*) (24)
   Medical Malpractice (45)
      Medical Malpractice–
         Physicians & Surgeons
      Other Professional Health Care
         Malpractice
   Other PI/PD/WD (23)
      Premises Liability (e.g., slip
         and fall)
      Intentional Bodily Injury/PD/WD
         (e.g., assault, vandalism)
      Intentional Infliction of
         Emotional Distress
      Negligent Infliction of
         Emotional Distress
      Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
   Business Tort/Unfair Business
      Practice (07)
   Civil Rights (e.g., discrimination,
      false arrest) (*not civil
      harassment*) (08)
   Defamation (e.g., slander, libel)
      (13)
   Fraud (16)
   Intellectual Property (19)
   Professional Negligence (25)
      Legal Malpractice
      Other Professional Malpractice
        (not medical or legal)
   Other Non-PI/PD/WD Tort (35)
**Employment**
   Wrongful Termination (36)
   Other Employment (15)

**Contract**
   Breach of Contract/Warranty (06)
      Breach of Rental/Lease
        Contract (*not unlawful detainer
        or wrongful eviction*)
      Contract/Warranty Breach–Seller
        Plaintiff (*not fraud or negligence*)
      Negligent Breach of Contract/
        Warranty
      Other Breach of Contract/Warranty
   Collections (e.g., money owed, open
      book accounts) (09)
      Collection Case–Seller Plaintiff
      Other Promissory Note/Collections
        Case
   Insurance Coverage (*not provisionally
      complex*) (18)
      Auto Subrogation
      Other Coverage
   Other Contract (37)
      Contractual Fraud
      Other Contract Dispute
**Real Property**
   Eminent Domain/Inverse
      Condemnation (14)
   Wrongful Eviction (33)
   Other Real Property (e.g., quiet title) (26)
      Writ of Possession of Real Property
      Mortgage Foreclosure
      Quiet Title
      Other Real Property (*not eminent
        domain, landlord/tenant, or
        foreclosure*)
**Unlawful Detainer**
   Commercial (31)
   Residential (32)
   Drugs (38) (*if the case involves illegal
      drugs, check this item; otherwise,
      report as Commercial or Residential*)
**Judicial Review**
   Asset Forfeiture (05)
   Petition Re: Arbitration Award (11)
   Writ of Mandate (02)
      Writ–Administrative Mandamus
      Writ–Mandamus on Limited Court
        Case Matter
      Writ–Other Limited Court Case
        Review
   Other Judicial Review (39)
      Review of Health Officer Order
      Notice of Appeal–Labor
        Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
   Antitrust/Trade Regulation (03)
   Construction Defect (10) Claims
   Involving Mass Tort (40) Securities
   Litigation (28)
   Environmental/Toxic Tort (30)
   Insurance Coverage Claims
      (arising from provisionally complex
      case type listed above) (41)
**Enforcement of Judgment**
   Enforcement of Judgment (20)
      Abstract of Judgment (Out of
        County)
      Confession of Judgment (*non-
        domestic relations*)
      Sister State Judgment
      Administrative Agency Award
        (*not unpaid taxes*)
      Petition/Certification of Entry of
        Judgment on Unpaid Taxes
      Other Enforcement of Judgment
        Case
**Miscellaneous Civil Complaint**
   RICO (27)
   Other Complaint (*not specified
      above*) (42)
      Declaratory Relief Only
      Injunctive Relief Only (*non-
        harassment*)
      Mechanics Lien
      Other Commercial Complaint
        Case (*non-tort/non-complex*)
      Other Civil Complaint
        (*non-tort/non-complex*)
**Miscellaneous Civil Petition**
   Partnership and Corporate
      Governance (21)
   Other Petition (*not specified
      above*) (43)
      Civil Harassment
      Workplace Violence
      Elder/Dependent Adult
        Abuse
      Election Contest
      Petition for Name Change
      Petition for Relief from Late
        Claim
      Other Civil Petition

**CIVIL CASE COVER SHEET**

*LexisNexis® Automated California Judicial Council Forms*

# Exhibit "3"

# PLAN DOCUMENT

# AND

# SUMMARY PLAN DESCRIPTION

# FOR

# ENNIS, INC.

# GOLD, SILVER & BRONZE PLANS

**EFFECTIVE:  JANUARY 1, 2006**
**RESTATED:  JANUARY 1, 2009**

06/03/2009  16:05     9727759889          HUMAN RESOURCES                    PAGE   02/02

## ENNIS, INC.
## EMPLOYEE BENEFIT PLAN

It is the intention of the Plan Sponsor, Ennis, Inc., to hereby amend and restate the Ennis, Inc. Employee Benefit Plan, a program of benefits constituting a self-funded "Employee Welfare Benefit Plan" under the Employee Retirement Income Security Act of 1974 (ERISA) and any amendments thereto.

IN WITNESS WHEREOF, the Plan Sponsor has executed, and the Claims Administrator has acknowledged, this Plan Document as of the Plan effective date shown herein.

Effective date of the Plan:  January 1, 2002; Amended and restated effective:  January 1, 2009

_____  01-01-09          _____  1-3-09
                          Date                                        Date

For Plan Sponsor:                           For Claims Administrator:
Richard Maresh, Director of Human Resources  Kathy Enochs, Chief Operating Officer
Ennis, Inc.                                  Group & Pension Administrators, Inc.

# TABLE OF CONTENTS

PAGE

GENERAL INFORMATION..................................................................................................... 3
INTRODUCTION................................................................................................................... 4
STATEMENT OF ERISA RIGHTS......................................................................................... 8
WOMEN'S HEALTH AND CANCER RIGHTS ACT OF 1998............................................... 9
GOLD PLAN SCHEDULE OF BENEFITS ........................................................................... 10
SILVER PLAN SCHEDULE OF BENEFITS ......................................................................... 17
BRONZE PLAN SCHEDULE OF BENEFITS....................................................................... 24
PRESCRIPTION DRUG PLAN ........................................................................................... 31
UTILIZATION REVIEW (UR) PROGRAM............................................................................ 35
NEWBORNS' AND MOTHERS' HEALTH PROTECTION ACT ........................................... 36
CASE MANAGEMENT....................................................................................................... 36
DISEASE MANAGEMENT .................................................................................................. 37
MATERNITY SUPPORT PROGRAM .................................................................................. 37
PRE-EXISTING CONDITION EXCLUSION LIMITATION ...................................................... 38
PORTABILITY AND CREDITABLE COVERAGE ................................................................. 39
COMPREHENSIVE MEDICAL BENEFITS .......................................................................... 40
MAJOR MEDICAL EXPENSE BENEFITS .......................................................................... 43
ORGAN TRANSPLANT BENEFITS..................................................................................... 49
MAJOR MEDICAL PLAN EXCLUSIONS AND LIMITATIONS.............................................. 52
COORDINATION OF BENEFITS......................................................................................... 56
COORDINATION PROCEDURES........................................................................................ 57
COORDINATION WITH MEDICARE.................................................................................... 58
COORDINATION WITH AUTOMOBILE INSURANCE COVERAGE .................................... 58
SUBROGATION AND REIMBURSEMENT PROVISIONS.................................................... 60
CLAIM REVIEW AND AUDIT PROGRAM ........................................................................... 63
PROCEDURES FOR CLAIMS AND APPEALS.................................................................... 65
         PROVIDER OF SERVICE APPEAL RIGHTS.............................................................. 70
GENERAL PROVISIONS..................................................................................................... 71
ELIGIBILITY FOR COVERAGE ........................................................................................... 75
QUALIFIED MEDICAL CHILD SUPPORT ORDERS / PLACEMENT FOR ADOPTION ........... 77
EFFECTIVE DATE OF COVERAGE .................................................................................... 78
EMPLOYEE AND DEPENDENT SPECIAL ENROLLMENT PERIODS.................................. 79
NO LATE ENROLLMENT PROVISION ............................................................................... 81
COVERAGE CHANGES...................................................................................................... 81
PLAN OPTION CHANGES ................................................................................................. 82
TERMINATION OF COVERAGE ......................................................................................... 83
COVERAGE DURING LEAVE OF ABSENCE...................................................................... 84
REHIRES / REINSTATEMENT OF COVERAGE .................................................................. 85
REPLACEMENT OF GROUP MEDICAL COVERAGE.......................................................... 86
FAMILY AND MEDICAL LEAVE (FMLA) ............................................................................ 87
CONTINUATION OF GROUP HEALTH COVERAGE (COBRA)........................................... 88
DEFINITIONS...................................................................................................................... 93

## GENERAL INFORMATION

This Plan Document describes the benefits for the Employees of Ennis, Inc. and its affiliates.   This statement is required by the Employee Retirement Income Security Act of 1974 (ERISA) and provides important information regarding your rights under this law.

**Name of the Plan**
Ennis, Inc. Employee Benefit Plan

**Plan Sponsor**
Ennis, Inc.
2441 Presidential Parkway
Midlothian, Texas 76065
800-641-2496

**Plan Administrator**
Ennis, Inc.
2441 Presidential Parkway
Midlothian, Texas 76065
800-641-2496

**Type of Plan**
Self-Funded Employee Welfare Benefit Plan

**Agent for Service of Legal Process**
**Legal Process may also be served on the Plan Administrator**
Legal Department
Ennis, Inc.
2441 Presidential Parkway
Midlothian, Texas 76065
800-641-2496

**Claims Administrator**
Group & Pension Administrators, Inc.
Park Central 8
12770 Merit Drive, 2nd Floor
Dallas, Texas 75251
972-238-7900 ♦ 800-827-7223
The Plan Administrator has retained the services of the Claims Administrator to administer Claims under the Plan.

**Regional Office of Employee Benefits Security Administration**
Employee Benefits Security Administration (EBSA)
Department of Labor
Dallas Regional Office
525 South Griffin Street, Rm 900
Dallas, Texas 75202-5025
972-850-4500 ♦ 866-444-EBSA (3272)
www.askebsa.dol.gov for electronic inquiries ♦ www.dol.gov/ebsa

**Plan Year**
The twelve (12) month period beginning January 1 and ending December 31 of each Calendar Year

**Employer Tax ID Number**
75-0256410

**IRS Plan ID Number**
506

**GPA Group Number**
H870451

3                        *Ennis, Inc. -- Gold, Silver & Bronze Plans*
                         *Restated Eff: 1/1/09*

## INTRODUCTION

**Ennis, Inc.,** hereinafter referred to as "Company," hereby amends and restates the Ennis, Inc. Employee Benefit Plan, a self-funded Employee Welfare Benefit Plan coming within the purview of the Employee Retirement Income Security Act of 1974 ("ERISA") hereinafter referred to as the "Plan". The Plan benefits and administration expenses are paid directly from the Employer's general assets, and the rights and privileges of which shall pertain to Employees and their Dependents with respect to such Plan. The Plan is not insured. Contributions received from Covered Persons are used to cover Plan costs and are expended immediately. As such, when applicable, Federal law and jurisdiction preempt State law and jurisdiction.

## PLAN ADMINISTRATOR AND DESIGNATED DECISION MAKER

The Plan is administered by the Plan Administrator in accordance with the provisions of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"). An individual or entity may be appointed by the Plan Sponsor to be Plan Administrator and serve at the convenience of the Plan Sponsor. If the Plan Administrator resigns, dies, is otherwise unable to perform, is dissolved, or is removed from the position, the Plan Sponsor shall appoint a new Plan Administrator as soon as reasonably possible.

Notwithstanding any provisions of this Plan Document and Summary Plan Description to the contrary, the Plan Sponsor has the authority to, and hereby does, allocate certain fiduciary responsibility to ELAP, Inc. *(the "Designated Decision Maker" or "DDM")*. The fiduciary responsibility allocated to the DDM is limited to discretionary authority and ultimate decision-making authority with respect to any appeals of denied claims, which shall be referred to the DDM by the Plan Administrator (the "Referred Appeals"). The Plan Sponsor has allocated additional fiduciary responsibility to the DDM, limited to discretionary authority and ultimate decision-making authority with respect to the review and audit of certain claims in accordance with the applicable Plan provisions under the section, "Claim Review and Audit Program". Such claims selected as eligible for review and audit shall be identified by the DDM under guidelines to which the Plan Sponsor has agreed, and shall be referred to the DDM by the Plan Administrator. The DDM shall have no authority, responsibility or liability other than with respect to the Referred Appeals and its duties under the Claim Review and Audit Program.

The Plan Administrator shall establish the policies, practices and procedures of this Plan. The Plan Administrator and the Designated Decision Maker shall administer this Plan in accordance with its terms. It is the express intent of this Plan that the Plan Administrator and the Designated Decision Maker shall have maximum legal discretionary authority to construe and interpret the terms and provisions of the Plan, to make determinations regarding issues which relate to eligibility for benefits (including the determination of what services, supplies, care and treatments are Experimental/Investigational), to decide disputes which may arise relative to a Covered Person's rights, and to decide questions of Plan interpretation and those of fact relating to the Plan. The decisions of the Plan Administrator and/or the Designated Decision Maker as to the facts related to any claim for benefits and the meaning and intent of any provision of the Plan, or its application to any claim, shall receive the maximum deference provided by law and will be final and binding on all interested parties. Benefits under this Plan will be paid only if the Plan Administrator or the Designated Decision Maker decides, in its discretion, that the Covered Person is entitled to them.

## DUTIES OF THE PLAN ADMINISTRATOR

The duties of the Plan Administrator include the following:

1. To administer the Plan in accordance with its terms;
2. To determine all questions of eligibility, status and coverage under the Plan;
3. To interpret the Plan, including the authority to construe possible ambiguities, inconsistencies, omissions and disputed terms;
4. To make factual findings;
5. To decide disputes which may arise relative to a Plan Participant's rights;
6. To prescribe procedures for filing a Claim for benefits, to review Claim denials and appeals relating to them and to uphold or reverse such denials;
7. To keep and maintain the Plan documents and all other records pertaining to the Plan;
8. To appoint and supervise a third party administrator to pay Claims;

*Ennis, Inc. -- Gold, Silver & Bronze Plans*
*Restated Eff: 1/1/09*

9. To perform all necessary reporting as required by ERISA;
10. To establish and communicate procedures to determine whether a medical child support order or national medical support notice is a QMCSO;
11. To delegate to any person or entity such powers, duties and responsibilities as it deems appropriate; and
12. To perform each and every function necessary for or related to the Plan's administration.

## DUTIES OF THE DESIGNATED DECISION MAKER

The Designated Decision Maker shall have the following duties with respect to the Referred Appeals:

1. To administer the Plan in accordance with its terms;
2. To determine all questions of eligibility, status and coverage under the Plan;
3. To interpret the Plan, including the authority to construe possible ambiguities, inconsistencies, omissions and disputed terms;
4. To make factual findings;
5. To decide disputes which may arise relative to a Plan Participant's rights;
6. To review Referred Appeals and to uphold or reverse any denials;
7. To keep and maintain records pertaining to the Referred Appeals;
8. To perform the duties in conjunction with the provisions of the Claim Review and Audit Program; and
9. To keep and maintain records pertaining to the Claim Review and Audit Program.

The duties of the DDM shall be limited to those set forth above.

## PHYSICIAN-PATIENT RELATIONSHIP

The Plan is not intended to disturb the Physician-Patient relationship. Physicians and other healthcare providers are not agents or delegates of the Plan Sponsor, Company, Plan Administrator, Employer or Benefit Services Manager. The delivery of medical and other healthcare services on behalf of any Covered Person remains the sole prerogative and responsibility of the attending Physician or other healthcare provider.

## FREE CHOICE OF HOSPITAL AND PHYSICIAN

Nothing contained in this Plan shall in any way or manner restrict or interfere with the right of any person entitled to benefits hereunder to select a Hospital or to make a free choice of the attending Physician or professional provider. However, benefits will be paid in accordance with the provisions of this Plan, and the Covered Person may have higher out-of-pocket expenses if the Covered Person uses the services of a Non-preferred Provider.

## PREFERRED PROVIDER INFORMATION

This Plan contains provisions under which a Plan Participant may receive more benefits by using certain providers. These providers are individuals and entities that have contracted with the Plan to provide services to Plan Participants at pre-negotiated rates. A list of these Preferred Providers will be periodically provided automatically and free of charge by the Plan Administrator. In addition, a Plan Participant may request a Preferred Provider list by contacting the Plan Administrator. The Preferred Provider list changes frequently; therefore, it is recommended that a Plan Participant verify with the provider that the provider is still a Preferred Provider before receiving services.

## PURPOSE

The purpose of the Plan Document is to set forth the provisions of the Plan which provide for the payment or reimbursement of all or a portion of Covered Medical Expenses.

*Ennis, Inc. -- Gold, Silver & Bronze Plans*
*Restated Eff: 1/1/09*

## EFFECTIVE DATE

Effective date of the Plan: **January 1, 2006;** Amended and restated effective: **January 1, 2009**

## CLAIMS ADMINISTRATOR

The Claims Administrator of the Plan is shown in the General Information section.

## NAMED FIDUCIARY

The named Fiduciary for purposes of applying the provisions of ERISA to the Plan is **Ennis, Inc..**

## CONTRIBUTIONS TO THE PLAN

Contributions to the Plan are to be made on the following basis:

The Company shall from time to time evaluate the costs of the Plan and determine the amount to be contributed by the Employer and the amount to be contributed by each Covered Employee.

Notwithstanding any other provision of the Plan, the Company's obligation to pay claims otherwise allowable under the terms of the Plan shall be limited to its obligation to make contributions to the Plan as set forth in the preceding paragraph. Payment of said claims in accordance with these procedures shall discharge completely the Company's obligation with respect to such payments.

In the event that the Company or Board of Directors of the Company terminates the Plan, then as of the effective date of termination, the Company and Covered Employees shall have no further obligation to make additional contributions to the Plan and the Plan shall have no obligation to pay claims incurred after the termination date of the Plan.

## CLAIMS PROCEDURE

In accordance with Section 503 of ERISA, the Plan Administrator shall provide adequate notice in writing to any covered Plan Participant whose claim for benefits under this Plan has been denied, setting forth the specific reasons for such denial and written in a manner calculated to be understood by the Plan Participant. Further, the Plan Administrator shall afford a reasonable opportunity to any Plan Participant, whose claim for benefits has been denied, for a fair review of the decision denying the claim by the person designated by the Plan Administrator for that purpose. Details of the claims procedure, which are in compliance with ERISA regulations, are found in this Plan Document under the Procedures for Claims and Appeals section.

## PROTECTION AGAINST CREDITORS

No benefit payment under this Plan shall be subject in any way to alienation, sale, transfer, pledge, attachment, garnishment, execution or encumbrance of any kind, and any attempt to accomplish the same shall be void. If the Plan Administrator shall find that such an attempt has been made with respect to any payment due or to become due to any Plan Participant, the Plan Administrator in its sole discretion may terminate the interest of such Plan Participant or former Plan Participant in such payment. And in such case the Plan Administrator shall apply the amount of such payment to or for the benefit of such Plan Participant or former Plan Participant, his/her spouse, parent, adult child, guardian of a minor child, brother or sister, or other relative of a Dependent of such Plan Participant or former Plan Participant, as the Plan Administrator may determine, and any such application shall be a complete discharge of all liability with respect to such benefit payment. However, at the discretion of the Plan Administrator, benefit payments may be assigned to health care providers.

## AMENDING AND TERMINATING THE PLAN

The Plan Sponsor expects to maintain this Plan indefinitely; however, as the settlor of the Plan, the Plan Sponsor, through its directors and officers, may, in its sole discretion, at any time, amend, suspend or terminate the Plan in whole or in part. This includes amending the benefits under the Plan.

Any such amendment, suspension or termination shall be enacted, if the Plan Sponsor is a corporation, by resolution of the Plan Sponsor's directors and officers, which shall be acted upon as provided in the Plan Sponsor's Articles of Incorporation or Bylaws, as applicable, and in accordance with applicable federal and state law. Notice shall be provided as required by ERISA. In the event that the Plan Sponsor is a different type of entity, then such amendment, suspension or termination shall be taken and enacted in accordance with applicable federal and state law and any applicable governing documents. In the event that the Plan Sponsor is a sole proprietorship, then such action shall be taken by the sole proprietor, in his own discretion.

If the Plan is terminated, the rights of the Covered Persons are limited to expenses incurred before termination. Previous contributions by the Employer shall continue to be used for the purpose of paying benefits under the provisions of this Plan with respect to claims arising before such termination.

All amendments to this Plan shall become effective as of a date established by the Plan Sponsor. Copies of all amendments shall be furnished to the Plan Administrator, the Trustees (if any) and any outside provider of Plan administrative services.

## MATERIAL MODIFICATIONS

The Plan Administrator shall notify all Covered Employees of any Plan Amendment considered a Material Reduction in covered services or benefits provided by the Plan as soon as administratively feasible after its adoption, but no later than sixty (60) days after the date of adoption of the modification or change. Covered Employees and beneficiaries must be furnished a Summary of such modifications or changes, and any changes so made shall be binding on each Covered Person. The sixty (60) day period for furnishing a Summary of Material Modifications or changes does not apply to any Employee covered by the Plan who would reasonably expect to receive a summary through other means within the next ninety (90) days.

Material Reductions disclosure provisions are subject to the requirements of ERISA and the Health Insurance Portability and Accountability Act of 1996 (HIPAA) and any related amendments.

## PLAN IS NOT A CONTRACT

This Plan Document constitutes the entire Plan. The Plan will not be deemed to constitute a contract of employment or give any Covered Employee the right to be retained in the service of the Employer or to interfere with the right of the Employer to discharge or otherwise terminate the employment of any Covered Employee.

*Ennis, Inc. – Gold, Silver & Bronze Plans*
*Restated Eff: 1/1/09*

# Exhibit "4"

1 | Derek Davis, Esq. (SBN 243957)
  | Carol A. Treasure, Esq. (SBN 225751)
2 | COOPER & SCULLY, P.C.
  | 100 California Street, Suite 850
3 | San Francisco, CA  94111
  | Email: derek.davis@cooperscully.com
4 | Email: carol.treasure@cooperscully.com
  | Tel: (415) 956-9700 / Fax: (415) 391-0274
5 | Attorneys for Defendants
  | ENNIS, INC., ENNIS INC. EMPLOYEE
6 | BENEFIT PLAN, GROUP & PENSION
  | ADMINISTRATORS, INC., dba G&P
7 | ADMINISTRATORS, INC., ELAP, INC.

8 | IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

9 | IN AND FOR THE COUNTY OF SAN LUIS OBISPO - UNLIMITED

10 | TWIN CITIES COMMUNITY HOSPITAL, INC., a California Corporation,

Case No. CV 108378

11 | Plaintiff,

**NOTICE OF FILING PETITION FOR REMOVAL**

12 | vs.

**[28 U.S.C.S. § 1446(d)]**

13 | ENNIS, INC., doing business as ENNIS INC.
14 | EMPLOYEE BENEFIT PLAN, a Texas
   | Corporation; GROUP & PENSION

Judge:  Hon. Martin J. Tangeman – Dept 2

Complaint Filed: November 15, 2010

15 | ADMINISTRATORS, INC., doing business as
   | G&P ADMINISTRATORS, INC., a Texas
16 | Corporation;  ELAP, INC., a Pennsylvania
   | Corporation; and DOES 1 through 25, inclusive.

17 | Defendants.

18 | 

19 | **TO PLAINTIFF AND ITS ATTORNEYS OF RECORD:**

20 | NOTICE IS HEREBY GIVEN that Defendants ENNIS, INC., dba ENNIS INC.

21 | EMPLOYEE BENEFIT PLAN, GROUP & PENSION ADMINISTRATORS, INC., erroneously

22 | sued as d/b/a G&P ADMINISTRATORS, INC., and ELAP, INC., in the above-entitled action,

23 | have on January 4, 2011, filed with the Clerk of the United States District Court for the Central

24 | District of California, Western Division, a Notice of Removal, and that this action was then

25 | removed and filed under:

26 | Federal Case No. _____

27 | A copy of said Notice of Removal is attached to this Notice as Exhibit "A," and is served

28 |

1

Notice of Filing Notice of Removal

D/794162.1

1 | and filed herewith.

2 | Dated: January 4, 2011,

COOPER & SCULLY, P.C.

By _____

DEREK DAVIS
CAROL A. TREASURE
Attorneys for Defendants
ENNIS, INC., ENNIS INC. EMPLOYEE
BENEFIT PLAN, GROUP & PENSION
ADMINISTRATORS, INC., dba G&P
ADMINISTRATORS, INC., ELAP, INC.

2

Notice of Filing Notice of Removal

D/794162.1

## PROOF OF SERVICE

*Twin Cities Community Hospital, Inc., v. Ennis, Inc., et al..*
San Luis Obispo Superior Court SE No. CV108378

I am a citizen of the United States, over the age of 18 years, and not a party to the above-entitled action. I am employed in the City and County of San Francisco, California, with the law firm of Cooper & Scully, A Professional Corporation ("firm"), located at 100 California Street, Suite 850, San Francisco, California 94111. On this date I served the following document(s):

### NOTICE OF FILING PETITION FOR REMOVAL

on the party(ies) identified below, in the following manner:

☒ **By First Class Mail Certified Mail, Return Receipt Requested.** I am familiar with the firm's practice for collecting and processing correspondence for mailing with the United States Postal Service. In the ordinary course of business, correspondence is deposited with the United States Postal Service on the same day such correspondence is collected. I placed true and correct copies of the document(s) listed above in sealed envelope(s) addressed as shown below and affixed with first-class postage and for Certified Mail, Return Receipt Requested. I caused such envelope(s) to be collected for mailing in accordance with the firm's ordinary business practice.

☐ **By Courier.** I placed a true and correct copy of the document(s) listed above in sealed envelope(s) addressed as shown below and delivered such envelope(s) to a courier dispatched from the firm's place of business with instructions to hand deliver them to the addressees shown below or the persons there apparently in charge.

☐ **By Overnight Express Service.** I placed a true and correct copy of the document(s) listed above in sealed envelope(s) addressed as shown below, and caused each such envelope to be deposited, with delivery fees paid, with an overnight express service carrier at San Francisco, California.

☐ **By Facsimile.** On this date, at the time indicated on the transmittal sheet, attached hereto, I transmitted from a facsimile transmission machine, which telephone number is (415) 391-0274, the document(s) described above and a copy of this declaration to the person(s), and at the facsimile transmission telephone number(s), set forth herein. The above-described transmission was reported as complete and without error by the properly issued transmission report issued by the facsimile transmission machine upon which the said transmission as made immediately following the transmission.

☐ **By Electronic Transmission.** I served electronically from the electronic notification address of _____ the document(s) described above and a copy of this declaration to the person(s) and at the electronic notification address(es) set forth herein. The electronic transmission was reported as complete and without error.

### SEE ATTACHED SERVICE LIST

☒ **(State)** I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

☐ **(Federal)** I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on January 5, 2011, at San Francisco, California.

_____
Sally Pincus

1
PROOF OF SERVICE OF NOTICE OF REMOVAL

D/794172.1

1

**SERVICE LIST**

2   Carrie S. McLain (SBN 1811674)
    Kelly A. Mashoney (SBN 246540)
3   Helton Law Group, P.C.
    401 E. Ocean Blvd., Suite 1010
    Long Beach, CA 90802
4   Tel: (562)901-4488
    Fax: (562) 901-4499
5
    Attorneys for Plaintiff
6   Twin Cities Community Hospital, Inc.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

D/794172.1

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Stephen V. Wilson and the assigned discovery Magistrate Judge is Victor B. Kenton.

The case number on all documents filed with the Court should read as follows:

## CV11- 113 SVW (VBKx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=======================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] Western Division | [ ] Southern Division | [ ] Eastern Division |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐)<br>TWIN CITIES COMMUNITY HOSPITAL, INC., a California Corporation | DEFENDANTS<br>ENNIS, INC., d/b/a ENNIS INC. EMPLOYEE BENEFIT PLAN, a Texas Corporation; GROUP & PENSION ADMINISTRATORS, INC., d/b/a G&P ADMINISTRATORS, INC., a Texas Corporation; ELAP, INC., a Pennsylvania Corporation and Does 1 through 25, inclusive |
|---|---|
| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)<br>Carrie S. McLain and Kelly A. Mahoney of Helton Law Group, P.C.<br>401 East Ocean Blvd., Suite 1010 Long Beach, CA 90802<br>Tel: (562) 901-449; Fax: (562) 901-4488 | Attorneys (If Known)<br>Derek S. Davis and Carol A. Treasure of Cooper & Scully, P.C.<br>100 California Street, Suite 850, San Francisco, CA 94111<br>Tel: (415) 956-9700; Fax: (415) 391-0274 |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff    ☑ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant    ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☑ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☑ 4 | ☑ 4 |
| Citizen of Another State | ☐ 2 | ☑ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☑ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☐ 1 Original Proceeding    ☑ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from another district (specify):    ☐ 6 Multi-District Litigation    ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☑ Yes   ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes   ☑ No    ☑ MONEY DEMANDED IN COMPLAINT: $ 183,865.47

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Plaintiff's Breach of Contract Claim is preempted by ERISA 29 USC Section 1001 et seq.

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | Disclosure Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 550 Civil Rights | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | FORFEITURE/ PENALTY | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | ☐ 610 Agriculture | PROPERTY RIGHTS |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☑ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | SOCIAL SECURITY |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | REAL PROPERTY | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | REAL PROPERTY | ☐ 210 Land Condemnation | IMMIGRATION | ☐ 660 Occupational Safety /Health | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 220 Foreclosure | ☐ 462 Naturalization Application | ☐ 690 Other | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 230 Rent Lease & Ejectment | ☐ 463 Habeas Corpus- Alien Detainee | | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | ☐ 240 Torts to Land | ☐ 465 Other Immigration Actions | | FEDERAL TAX SUITS |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 290 All Other Real Property | ☐ 290 All Other Real Property | | | ☐ 871 IRS-Third Party 26 USC 7609 |

**CV11·00113**

FOR OFFICE USE ONLY:   Case Number: _____

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑No  ☐Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑No  ☐Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)  ☐ A. Arise from the same or closely related transactions, happenings, or events; or
              ☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
              ☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
              ☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐  Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| San Luis Obispo County, California | |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐  Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | (Ennis Inc. dba Ennis Inc. Employee Benefit Plan) Midlothian, Texas |
| | (Group & Pension Administrators, Inc. dba G&P Administrators Inc.) Dallas, TX |
| | (Elap, Inc.) Chester Springs, Pennsylvania |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| SAN LUIS OBISPO COUNTY | |

\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved.

**X. SIGNATURE OF ATTORNEY (OR PRO PER):** _Carol A. Treasure_    Date _January 4, 2011_

Notice to Counsel/Parties:  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |