1 | Derek Davis, Esq. (SBN 243957)
Carol A. Treasure, Esq. (SBN 225751)
2 | COOPER & SCULLY, P.C.
100 California Street, Suite 850
3 | San Francisco, CA  94111
Email: derek.davis@cooperscully.com
4 | Email: carol.treasure@cooperscully.com
Tel:  (415) 956-9700 / Fax: (415) 391-0274
5 |
Attorneys for Defendants
6 | ENNIS INC., GROUP & PENSION
ADMINISTRATORS, INC., and ELAP, INC.
7 |

8 |                    UNITED STATES DISTRICT COURT

9 |                    CENTRAL DISTRICT OF CALIFORNIA

10 | TWIN CITIES COMMUNITY HOSPITAL,    ) Case No. 2:11-cv-00113-SVW-VBK
INC., a California Corporation,        )
11 |                                    ) **MEMORANDUM OF POINTS AND**
                                       ) **AUTHORITIES IN SUPPORT OF**
12 |            Plaintiff,              ) **MOTION FOR SUMMARY JUDGMENT**
                                       ) **PURSUANT TO FRCP 56**
13 |     vs.                           )
                                       )
14 | ENNIS INC., doing business as ENNIS INC. )
EMPLOYEE BENEFIT PLAN, a Texas       ) Date:  March 28, 2011
15 | Corporation; GROUP & PENSION       ) Time:  1:30 p.m.
ADMINISTRATORS, INC., doing business as ) Courtroom: 6
16 | G&P ADMINISTRATORS, INC, a Texas   ) Judge: Hon. Stephen V. Wilson
Corporation; ELAP, INC., a Pennsylvania )
17 | Corporation; and, DOES 1 through 25, ) Complaint Filed:11/15/10
inclusive,                            )
18 |                                    )
            Defendants.               )
19 | _____)

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

**TABLE OF CONTENTS**

I.     INTRODUCTION AND PROCEDURAL BACKGROUND....................................1

II.    LEGAL STANDARD FOR FRCP 56 DISMISSAL.............................................1

III.   STATEMENT OF FACTS.............................................................................2

      A.    The Parties......................................................................2
           1.    Ennis, Inc. (Defendant)......................................2
           2.    GPA (Defendant)..............................................2
           3.    ELAP (Defendant) .............................................3
           4.    Twin Cities Community Hospital (Plaintiff)..................3

      B.    Two Separate Agreements........................................................4
           1.    Defendant Ennis' Agreement with First Health Group Corp. ...............4
           2.    Plaintiff Twin Cities Community Hospital's Agreement with Coventry Health Care Network, Inc. and Coventry Companies...........4

IV.   A BREACH OF CONTRACT CLAIM MUST FAIL AS A MATTER OF LAW.........5

      A.    Plaintiff Lacks Standing To Assert A Breach of Contract Claim....................5
           1.    Plaintiff Does Not Have A Contract With Defendants........................5
           2.    Plaintiff Is Not A Third Party Beneficiary To Any Contract With Defendants....................................................................7

      B.    No Breach of Contract Occurred Since Defendants Were Acting Within The Scope of Duties As Plan Fiduciaries and/or Administrators.......................8
           1.    Ennis Is Authorized To Exclude Or Limit Payment In Accordance With Terms of Its Benefit Plan...............................................8
           2.    GPA Is Authorized To Perform Duties Based On ERISA Plan.............9
           3.    ELAP Is Authorized To Perform Duties Based On ERISA Plan..........10

V.    ERISA PREEMPTS ALL ASPECTS OF STATE CLAIMS "RELATED TO" PLAN....11

      A.    ERISA Governs Ennis' Employee Benefit Plan.....................................11

      B.    General Statutory Basis of ERISA Preemption......................................12

      C.    ERISA Preempts All Claims "Relating To" An Employee Benefit Plan...........13

      D.    Plaintiff's Claim Necessarily Relates to and Requires Interpretation of Defendant's Employee Benefit Plan.................................................15

      E.    Plaintiff's Appeal Based On A Denial Of Benefits Belies The Question Of ERISA's Applicability...........................................................17

      F.    No Independent Obligation Or Duty Exists To Override ERISA Preemption....19

VI.   CONCLUSION........................................................................22

i

1

**TABLE OF AUTHORITIES**

2

**Cases**

3

*Abraham v. Norcal Waste Sys., Inc.*
(9th Cir. 2001) 265 F.3d 811................................................14

4

*Aetna Health Inc. v. Davila*
5  (2004) 542 U.S. 200...............................................1, 11, 13, 14, 17, 18, 19, 22

6

*Blue Cross of Cal. v. Anesthesia Care Assocs. Med. Group, Inc.,*
(9th Cir. 1999) 187 F.3d 1045.......................................14, 15, 20

7

*Bui v. American Telephone and Telegraph, Inc.*
8  (9th Cir. 2002) 310 F.3d 1143.........................................14, 15

9

*California Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc.*
(1997) 519 U.S. 316.....................................................14

10

*Careau & Co. v. Security Pacific Business Credit, Inc.*
11  (1990) 222 Cal.App.3d 1371..............................................5, 6

12

*Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters*
(9th Cir. 2007) 497 F.3d 972..............................................13

13

*Celotex Corp. v. Catrett*
14  (1986) 477 U.S. 317....................................................2

15

*Cromwell v. Equicor-Equitable HCA Corp.*
(6th Cir. 1991) 944 F.2d 1272.............................................18

16

*Filippo Industries, Inc. v. Sun Ins. Co.*
17  (1999) 74 Cal.App.4th 1429..............................................10

18

*FMC Corp. v. Holliday*
(1990) 498 U.S. 52......................................................13

19

*Gruenberg v. Aetna Ins. Co.,*
20  (1973) 9 Cal.3d 566....................................................10

21

*Hatchwell v. Blue Shield of California*
(1988) 198 Cal.App.3d 1027..............................................7

22

*High Tech Gays v. Defense Indus. Sec. Clearance Office*
23  (9th Cir.1990) 895 F.2d 563............................................2

24

*Holcomb v. Wells Fargo Bank, N.A.*
(2007) 155 Cal.App.4th 490..............................................6

25

*Ingersoll-Rand Co. v. McClendon*
26  (1990) 498 U.S. 133...................................................13

27

*Kanne v. Connecticut General Life Ins. Co.*
(9th Cir. 1988) 867 F.2d 489............................................6

28

*Kennedy v. Connecticut General Life Insurance Company*
(7th Cir. 1991) 924 F.2d 698.................................................................18

*Killian v. Millard*
(1991) 228 Cal.App.3d 1601...............................................................6

*Marin General Hosp. v. Modesto & Empire Traction Co.*
(9th Cir. 2009) 581 F.3d 941....................................................20, 21, 22

*Metropolitan Life Ins. Co. v. Taylor*
(1987) 481 U.S. 58.............................................................................13

*Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*
(9th Cir.2000) 210 F.3d 1099................................................................2

*Otworth v. Southern Pacific Transp. Co.*
(1985) 166 Cal.App.3d 452..................................................................6

*Peralta v. Hispanic Bus., Inc*
(9th Cir. 2005) 419 F.3d 1064.............................................................15

*Pilot Life Ins. Co. v. Dedeaux*
(1987) 481 U.S. 41........................................................................12, 13

*Providence Health Plan v. McDowell*
(9th Cir. 1999) 385 F.3d 1168.............................................................14

*Rechert v. Genreal Ins. Co.*
(1968) 68 Cal.2d 822...........................................................................6

*Shaw v. Delta Air Lines, Inc.*
(1983) 463 U.S. 85.............................................................................14

**Memorandum of Opinions**

*Porter et al. v. Anthem Health Plans of Kentucky*
(USDC, Eastern District, Kentucky, March 18, 2010) Civil Action No. 10-8-HRW,
Memorandum of Opinion and Order, p.6.............................16, 18, 19

**Federal Rules**

Fed. R. Civ. P. 1..................................................................................2

Fed. R. Civ. P. 56(b)...........................................................................3

Fed. R. Civ. P. 56(c)(2).......................................................................2

**Codes**

28 U.S.C. § 1441.................................................................................1

28 U.S.C. §1446..................................................................................1

29 U.S.C. §1001(a)............................................................................11

29 U.S.C. §1001(b)...............................................................................11

29 U.S.C. §1002(1)...............................................................................12

29 U.S.C. §1002(3)...............................................................................12

29 U.S.C. §1003(a)...............................................................................11

29 U.S.C. §1132 ...................................................................................12

29 U.S.C. §1132(a)............................................................................1, 13

29 U.S.C. §1132(a)(1)(B).......................................................................13

29 U.S.C. §1144(a).... ...........................................................................13

Employee Retirement Insurance Security Act of (1974) §502(a).....................12

Employee Retirement Insurance Security Act of (1974) §502(a)(1(B) .........19, 21

Employee Retirement Insurance Security Act of (1974) §514(a)............13, 14, 15

**Other Sources**

*Schwarzer, Tashima & Wagstaffe,* Federal Civil Procedure Before Trial (2010) ...................2

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION AND PROCEDURAL BACKGROUND

On November 15, 2010, plaintiff TWIN CITIES COMMUNITY HOSPITAL INC. ("Twin Cities") filed a civil action in the San Louis Obispo Superior Court alleging the following causes of action against defendants individually and collectively:  (1)  Breach of written contract;  (2) Breach of Implied Contract;  (3) Breach of the Covenant of Good Faith and Fair Dealing;  (4) Negligent Misrepresentation;   (5) Quantum Meruit;   (6) Account Stated;   (7)   Negligent Interference with Prospective Economic Relations;  and (8) Economic Interference – Inducing Breach of Contract against defendants ENNIS INC, GROUP & PENSION ADMINISTRATORS, INC., and ELAP, INC. (collectively, "defendants").   [Exhibit **F**, Complaint, attached to Declaration of Carol Treasure ("Treasure Decl.").]  Plaintiff subsequently served a copy of the summons and complaint on defendants on December 6, 2011.  Defendants filed an Answer on January 4, 2011 and on January 5, 2011, filed their Notice of Removal pursuant to 28 U.S.C. §§ 1441 and 1446, thereby removing the action to the Central District of California on the basis of diversity jurisdiction and federal question jurisdiction.

Defendants now bring their motion for summary judgment pursuant to Fed. Rules of Civ. Proc. 56 on the following grounds:  (a) plaintiff lacks standing to assert a breach of contract claim;  (b) no breach of contract or independent obligation or duty existed where defendants were acting the scope of their duties under an employee welfare benefit plan and (c)  because plaintiff's state law claims relate to, and are made in connection with, or reference to an Employee Retirement Insurance Security Act ("ERISA") plan, and are within the scope ERISA's civil enforcement scheme, they are completely preempted. 29 U.S.C. 1132(a).  *Aetna Health Inc. v. Davila* (2004) 542 U.S. 200, 221.

## II.

## LEGAL STANDARD FOR FRCP 56 DISMISSAL

A motion for a summary judgment provides a procedure for terminating without trial actions in which there is no genuine issue as to any material fact and the movant is entitled to

1

1   judgment as a matter of law.' Fed. R. Civ. P. 56(c)(2); *Schwarzer, Tashima & Wagstaffe*,

2   Federal Civil Procedure Before Trial (2010) ¶14:4, p. 14-2. The Federal Rules of Civil

3   Procedure have long authorized motions for summary judgment upon proper showings of the

4   lack of a genuine, triable issue of material fact. Indeed, the "summary judgment procedure is

5   properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the

6   Federal Rules as a whole, which are designed "to secure the just, speedy and inexpensive

7   determination of every action." Fed. R. Civ. P. 1. *Celotex Corp. v. Catrett* (1986) 477 U.S. 317,

8   327.

9        In order to carry its burden of production regarding the motion for summary judgment,

10   the moving party must either produce evidence negating an essential element of the nonmoving

11   party's claim or defense or show that the nonmoving party does not have enough evidence of an

12   essential element to carry its ultimate burden of persuasion at trial. In order to carry its ultimate

13   burden of persuasion on the motion, the moving party must persuade the court that there is no

14   genuine issue of material fact. *High Tech Gays v. Defense Indus. Sec. Clearance Office* (9th

15   Cir.1990) 895 F.2d 563, 574; *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc*. (9th

16   Cir.2000) 210 F.3d 1099, 1103.

17        In this instant matter, an order granting summary judgment in favor of the defendants is

18   proper under the legal standard for dismissal under Fed. R. Civ. P. 56(b) since the action has no

19   merit and there is no triable issue as to any material fact. Accordingly, defendants are entitled to

20   judgment as a matter of law.

21                     **III.**

22           **STATEMENT OF FACTS**

23   **A.**    **The Parties**

24         **1.**     **Ennis, Inc. (Defendant)**

25        Defendant Ennis, Inc. is a Texas based company which sponsors an employee benefit

26   plan, Ennis, Inc. Employee Benefit Plan ("the Plan") for its employees.

27         **2.**    **GPA (Defendant)**

28        In conjunction with its self-funded program of benefits, Ennis, Inc., the employer and

Plan Sponsor, has designated Group & Pension Administrators, Inc., ("GPA") as the third party Claims Administrator of the Plan pursuant to its Plan Document and Summary Plan Description For Ennis, Inc. ("Plan Document") [Exhibit **A**, Plan Document, p. 3, attached to the Declaration of Ronald M. Graham ("Graham Decl.").] The Plan does not ascribe any fiduciary functions to GPA as the claims administrator and clearly does not assign GPA any decision-making capacities or roles with respect to payment of claims.

### 3.    ELAP (Defendant)

Ennis' Plan Document outlines the responsibilities and duties of the Designated Decision Maker, Defendant ELAP, Inc. ("ELAP"). ELAP has been allocated certain fiduciary responsibilities as the Designated Decision Maker pursuant to the express language of the Plan Document which states in pertinent part:

> "... the Plan Sponsor has the authority to, and hereby does, allocate certain fiduciary responsibility to ELAP, Inc. *(the "Designated Decision Maker")*. The fiduciary responsibility allocated to the DDM is limited to discretionary authority and ultimate decision-making authority with respect to any appeals of denied claims, which shall be referred to the DDM by the Plan Administrator (the "Referred Appeals"). The Plan Sponsor has allocated additional fiduciary responsibility to the DDM, limited to discretionary authority and ultimate decision-making authority with respect to the review and audit of certain claims in accordance with the applicable Plan provisions under the section, "Claim Review and Audit Program." [Exhibit **A**, Plan Document, p. 4 at Graham Decl.]

As noted above, ELAP's sole function in connection with the facts and circumstances in this matter is as an ERISA plan fiduciary.

### 4.    Twin Cities Community Hospital (Plaintiff)

Plaintiff Twin Cities is a hospital in California. In its Complaint, the hospital seeks recovery of benefits and reimbursements for medical services it provided to a "Patient,"[1] who was employed by Ennis, Inc. and was a participant in Ennis, Inc. Employee Benefit Plan ("the Plan"). Plaintiff alleges in the Complaint that on or about March 31, 2009, defendants purportedly breached their obligations to pay the hospital for the medical services provided to the Patient by paying through GPA, a portion of the amount owed totaling $81,582.02, but denied

---

[1] The name and identity of the patient has been omitted to protect the person's privacy.

1    payment for the additional amount as a result of a unilateral audit GPA and/or ELAP had

2    performed disallowing certain charges.  The Patient was responsible for $1,329.35, leaving an

3    unpaid balance of $183,865.47.  On or around May 21, 2009, Twin Cities sent a written appeal to

4    GPA, informing GPA that its unilateral audit was in breach of the Agreement and $183,865.47

5    was still owed to the Hospital.  Despite this information, Twin Cities' appeal was denied on June

6    19, 2009.  [Exhibit **F**, Complaint, ¶16-17, p. 4:11-18, at Treasure Decl.]

7    **B.**    <u>**Two Separate Agreements**</u>

8        **1.**    **Defendant Ennis' Agreement with First Health Group Corp.**

9      Indeed, First Health Group Corp. ("First Health") is a wholly owned subsidiary of

10    Coventry Health Care, Inc., with which Ennis has an Agreement to "provide certain managed

11    care services, including access to First Health's network of Contract Providers, or arrange for

12    such services" [Exhibit **B**, Ennis and First Health Agreement and Amendment, p. 1 of 17, at

13    Graham Decl.]  It is noteworthy that the only two entities in this agreement are Ennis and a non-

14    party entity, First Health.  Page 2 of the Amendment to the Ennis-First Health Agreement clearly

15    indicates that only authorized representatives from First Health Group Corp. and Ennis Inc.

16    executed this contract.  [Exhibit **B**, Ennis and First Health Agreement and Amendment, p. 11 of

17    17 and 2 of 4, at Graham Decl.]  Defendant GPA is not a signatory to the contract.  Likewise,

18    defendant ELAP is not a signatory to this agreement.

19        **2.**    **Plaintiff Twin Cities Community Hospital's Agreement with Coventry**

20              **Health Care Network, Inc. and Coventry Companies**

21      In the Complaint, plaintiff alleges an agreement with Coventry Health Care Network, Inc.

22    and Coventry Companies ("Coventry") to provide hospital services to plan members. [Exhibit **F**,

23    Complaint, ¶7, p.2:21-23, at Treasure Decl.]  First Health Products is described by plaintiff as

24    one category of products by Coventry for which the hospital has agreed to participate in.  The

25    Complaint describes First Health Products as a "including a network Lease product which

26    includes Third Party Administrators, large employers, or insurance carriers who are interested in

27    securing access to Coventry Company networks." [Exhibit **F**, Complaint, ¶8, p.3:3-7, at

28    Treasure Decl.]  Plaintiff asserts that its Agreement with Coventry authorizes a "Payor" to access

1  its networks of Participating Providers. In return the hospital is "obligated to provide hospital

2  services at discounted rates." [Exhibit **F**, Complaint, ¶10, p.3:12-13, at Treasure Decl.] The

3  actual terms of plaintiff's contractual agreement with Coventry are unknown and a copy of the

4  contract was not attached to the Complaint. Nevertheless, the hospital's agreement with

5  Coventry is immaterial to this Court's present determination that no contractual breach occurred

6  here. Furthermore, that agreement is not pertinent to the claims at issue, as demonstrated infra.

7  **Issue Presented**:

8       The ultimate question before this Court is whether plaintiff's broad sweeping attack and

9  eight separate causes of action against a self-funded ERISA plan, its administrator and its

10 fiduciary, all based on a denial of benefits in the context can escape preemption under the

11 Employee Retirement Insurance Security Act (ERISA) of 1974.

12 **Suggested Response**:

13      No. In the absence of narrow claims focused on an enforceable contract upon which

14 plaintiff has standing to assert a breach of contract claim, ERISA preempts all eight causes of

15 action asserted by plaintiff against all three ERISA plan entities. No independent legal duty

16 exists to displace ERISA. Even a plain reading of the only contract executed by the ERISA Plan

17 and not executed by any other defendant, reveals that plaintiff was not a party to the contract and

18 no independent legal duty exists. Even if plaintiff somehow had standing to assert claims under

19 the contract, the contract itself requires interpretation of the Plan documents to apply deductibles,

20 co-pays, benefits and allowable claim limits before determining the ERISA Plan's obligations, if

21 any.

22                                             **IV.**

23      **A BREACH OF CONTRACT CLAIM MUST FAIL AS A MATTER OF LAW**

24 A.   **Plaintiff Lacks Standing To Assert A Breach of Contract Claim**

25           1.   **Plaintiff Does Not Have A Contract With Defendants**

26      As a threshold matter, to state a breach of a contract claim, a plaintiff must plead the

27 existence of a contract with the defendant. *Careau & Co. v. Security Pacific Business Credit,*

28 *Inc.* (1990) 222 Cal.App.3d 1371, 1388. Under California law, a complaint pleading breach of

5

1   contract must indicate on its face whether the contract is written, oral, or implied by conduct,

2   and, if an action is based on a written contract, the terms must be set out verbatim in the body of

3   the complaint, or a copy of written instrument must be attached and incorporated by reference.

4   *Otworth v. Southern Pacific Transp. Co.* (1985) 166 Cal.App.3d 452, 458-459;   *Holcomb v.*

5   *Wells Fargo Bank, N.A.* (2007) 155 Cal.App.4th 490.

6           It is also well-established in California that only parties to a contract have standing to sue

7   for breach of contract.   *Careau & Co. v. Security Pacific Business Credit, Inc.*, supra, 222

8   Cal.App.3d at 1388,   *see also, Rechert v. Genreal Ins. Co.* (1968) 68 Cal.2d 822, 830;   *Killian v.*

9   *Millard* (1991) 228 Cal.App.3d 1601, 1605 (because defendant had no substantive right in the

10  contract at issue, he lacked standing to bring claim based on that contract)

11          Here, plaintiff has filed suit asserting as the basis of the claim, a breach of contract.  This

12  breach of contract claim must fail since plaintiff has no standing to assert a breach however.   In

13  order to assert a breach of contract claim, the claimant must be a party to the contract itself or

14  have some right as a beneficiary to assert a claim for breach.  In this instance, plaintiff is barred

15  from bringing any claim for breach of contract, since it clearly lacks standing to do so, and

16  cannot insert itself into a separate contract between Ennis and First Health.   Twin Cities is

17  clearly not a party to the Agreement between First Health and Ennis. [See, e.g. Exhibit **B**, Ennis

18  and First Health Agreement and Amendment, at Graham Decl.]

19          No written or oral contract exists or between Twin Cities and any of the defendants,

20  including Ennis or any of its affiliates, GPA and ELAP.  This most basic and fatal flaw to the

21  plaintiff's "breach of contract" claim (i.e. the lack of a contract between the parties) cannot be

22  cured by the unfounded and conclusory assertion that defendants assumed some duties and

23  obligations owed to plaintiff with respect to reimbursements for medical services.   Plaintiff

24  cannot allege a breach of contract claim against any of the defendants because it did not enter

25  into a contract with these defendants.   [See, e.g. Exhibit **B**, Ennis and First Health Agreement

26  and Amendment, at Graham Decl.]   Plaintiff cannot avoid dismissal of the breach of contract

27  claim through erroneous and/or creative assertions of purported facts.

28          It is undisputed that one defendant (Ennis) signed or executed a contract with other non-

6

1  party entities.   Defendant Ennis is the only contracting party to the Agreement which is of

2  significance in this action.  Defendants GPA and ELAP are neither parties nor signatories to the

3  Agreement between First Health and Ennis, and should not bear any liability whatsoever.  As

4  non-parties to the contract at issue herein, defendants GPA and ELAP owed no duty of

5  performance pursuant to the Agreement and therefore, could not have "breached" this non-

6  existent duty.

7          **2.       Plaintiff Is Not A Third Party Beneficiary To Any Contract With**

8              **Defendants**

9          Someone who is not a party to the contract has no standing to enforce the contract or to

10  recover extra-contract damages for wrongful withholding of benefits to the contracting party.

11  *Hatchwell v. Blue Shield of California* (1988) 198 Cal.App.3d 1027, 1034.  Plaintiff is not a third

12  party beneficiary of any contract or agreement between the defendant(s) and any other entity.  In

13  particular, Article 9 of the Agreement between Ennis and First Health includes a provision

14  specifically prohibiting any third-party rights with respect to that Agreement.  The First Health

15  Group Corp. Provider Network Services Agreement states as follows:

16          "9.3.  **No Third-Party Beneficiaries.**  This Agreement is entered into by
       and between the parties hereto solely for their benefit.  **The parties have**

17       **not created or established any third-party beneficiary status or rights**
       **in any person or entity not a party hereto** including, but not limited to,

18       any Covered person, provider, subcontractor, or other third-party, and no
       such third-party will have any right to enforce any right or enjoy any

19       benefit created or established under this Agreement."  [Exhibit **B**, Ennis
       and First Health Agreement and Amendment, p. 8 of 17, ¶9.3, at Graham

20       Decl.] [Emphasis added.]

21          The contract's language and terms do not create any rights of enforcement in third

22  parties, such as the plaintiff hospital.  Plaintiff stands entirely outside of the express contractual

23  terms of the Agreement under which it asserts a claim for relief, and any rights the hospital

24  claims in this asserting this action is purely illusory.   Consequently, because plaintiff is

25  absolutely precluded from asserting a contractual breach due to lack of standing or status as a

26  valid third party beneficiary, the claim fails and the Complaint should properly be dismissed.

27  //

28  //

**B.**   **No Breach of Contract Occurred Since Defendants Were Acting Within The Scope of Duties As Plan Fiduciaries and/or Administrators**

Ennis' Plan Document underscores the fact that the defendants were acting within the scope of their authorized duties as plan fiduciaries and/or plan administrators. In particular, it states that "ERISA imposes duties upon the people who are responsible for the operation of the Employee Welfare benefit Plan. The people who operate the Plan, called "fiduciaries" of the Plan, have a duty to do so prudently and in the interest of [the beneficiary] and other Plan Participants and beneficiaries." [Exhibit **A**, Plan Document, p. 8, at Graham Decl.] Ennis' ERISA governed plan expressly authorizes the plan administrator to make determinations of whether a charge is within the Allowable Claim Limit. [Exhibit **A**, Plan Document, p. 63, at Graham Decl.] To hold otherwise would undermine and subvert the very foundation and terms of this employee benefit plan.

**1.**   **Ennis Is Authorized To Exclude Or Limit Payment In Accordance With Terms of Its Benefit Plan**

Ennis' contract is with First Health, not Twin Cities. Nevertheless, even if plaintiff could establish that it had some right to enforce the Agreement between Ennis and First Health, no contractual breach occurred with respect to defendants' payment to the hospital for medical services rendered to a Plan subscriber.

Ennis' Plan Document and Description "set[s] forth the provisions of the Plan which provide for the payment or reimbursement of **all or a portion** of Covered Medical Expenses" [Exhibit **A**, Plan Document, p. 5, at Graham Decl.] [Emphasis added.] Moreover, Ennis' Agreement with First Health, a network which coordinates groups of providers with payors (clients), acknowledges that payment for medical services should be made by the payor, except for that which is "not otherwise excluded or limited by such Benefit Plan." [Exhibit **B**, Ennis and First Health Agreement and Amendment, p. 3 of 17, at Graham Decl.]. The First Health Group Corp. Provider Network Services Agreement with Ennis, Inc. explicitly outlines the obligations of the client (Ennis) with respect to payment to contract providers in section 3.7.1 as follows:

8

1     "3.7.1   <u>Amount of Payment</u>.   Client shall pay Contract Providers that
      portion of the Contract Rate which exceeds the Copayment, Coinsurance
2     and Deductible amounts specified in the applicable Benefit Plan and
      which is not otherwise excluded or limited by such Benefit Plan."
3     [Exhibit **B, Ennis and First Health Agreement and** Amendment, **p. 3 of
      17, at Graham Decl.**]
4

5     This is one such circumstance in which the billed charges exceeded the coverage and/or

6     reimbursement available under the benefit plan.  Moreover, the Plan explicitly contemplates that

7     in the event of a provider seeking reimbursement above and beyond the Allowable Claim Limits,

8     the Plan fiduciary may make a determination regarding the maximum amount covered.   The

9     pertinent section provides that:

10              "Notwithstanding any conflicting contracts or agreements, the Plan may
                consider the Allowable Claim Limits as the Maximum Amount of
11              Covered Medical Expense that may be considered for reimbursement
                under the Plan, and may apply this determination in lieu of any PPO
12              network provider hospital's per diem, DRG rates or PPO discounted rates
                as the amount considered for reimbursement under the Plan."  [Exhibit **A,**
13              Plan Document, p. 64, at Graham Decl.]

14    The "Claim Review and Audit Program" section in the Plan document further explains

15    that benefit claims "will be reduced for any charges that are determined to be in excess of

16    allowable Claim Limits."  [Exhibit **A,** Plan Document, p. 63, at Graham Decl.]   Accordingly,

17    there can be no breach of the Agreement, when these circumstances were contemplated and

18    authorized by the Plan itself.  Any criticism by plaintiff is directly levied against the Plan's terms

19    and provisions.

20              **2.      GPA Is Authorized To Perform Duties Based On ERISA Plan**

21    As a preliminary matter, it is undisputed that defendant GPA is not a party or signatory to

22    any contract or agreement involving plaintiff Twin Cities Community Hospital.  Plaintiff claims

23    (disputed) that GPA made negligent representations that it would "cover the Patient's care and

24    treatment."  [Exhibit **F,** Complaint, ¶50 p.8:18-20, at Treasure Decl.]   GPA is the Claims

25    Administrator for Ennis' health plan.  Though it manages the administrative functions of the

26    employee benefit plan, it does not have any fiduciary functions nor acts in a decision-making

27    capacity with respect to denials of claims or appeals.  GPA was acting within its outlined duties

28    with respect to managing this claim.  The Plan states that:

9

1
2
3

> "Once a written Claim for benefits is received, the Claims Administrator, acting on the discretionary authority of the Plan Administrator, may elect to have such Claim reviewed or audited for accuracy and reasonableness of charges as part of the adjudication process."   [Exhibit **A**, Plan Document, p. 67, at Graham Decl.]

4      Plaintiff's allegation that GPA is liable for contract damages because it allegedly handled

5  the claim or communicated the denial of benefits to the plaintiff does not create contractual

6  liability.  *Filippo Industries, Inc. v. Sun Ins. Co.* (1999) 74 Cal.App.4th 1429, 1443. [agent that

7  denied claim on behalf of insurer cannot be liable for insurer's breach of contract.]  *Gruenberg v.*

8  *Aetna Ins. Co.,* (1973) 9 Cal.3d 566 [corporation, law firm and their employees retained by

9  insurance company to investigate and manage claim are not liable for breach of contract to the

10  policyholder.]   Because no contract is pled or exists which can create contractual liability on

11  GPA, this defendant should be dismissed from this lawsuit.

12           **3.      ELAP Is Authorized To Perform Duties Based On ERISA Plan**

13      A review occurred and it was determined that the amount requested from Twin Cities was

14  excessive. [Exhibit **E**, Plaintiff's Level 1 Appeal, at Graham Decl.]  ELAP's review and audit of

15  plaintiff's benefit claim was entirely authorized under the ERISA plan.   Despite plaintiff's

16  protestations that ELAP "interfered" by performing an audit of the bills and charges submitted

17  by the hospital, ELAP was entirely within its rights and duties to audit and review appeals

18  pertaining to benefits and reimbursements.   The Plan Document explicitly outlines the role of

19  ELAP with respect to plan interpretation and eligibility of benefits noting the following:

20
21
22
23
24

> "...It is the express intent of this Plan that the Plan Administrator and the Designated Decision Maker shall have maximum legal discretionary authority to construe and interpret the terms and provisions of the Plan, to make determinations regarding issues which relate to eligibility for benefits (including the determination of what services, supplies, care and treatments are Experimental/Investigational), to decide disputes which may arise relative to a Covered Person's rights, and to decide questions of Plan interpretation and those of fact relating to the Plan." [Exhibit **A**, Plan Document, p 4, at Graham Decl.]

25      Ennis' health plan has a built-in mechanism for review whenever a claim is denied or a

26  dispute arises.  ELAP is the designated decision maker and manages all aspects of the appeal in a

27  way which is functionally equivalent to an administrative law judge (ALJ) in determining claims

28  of this nature.   In performing an independent review of the claim, ELAP may audit for the

1   purpose of adjusting the maximum benefit claimed.  This function is entirely within the duties

2   and responsibilities of ELAP as articulated in the Plan Document and Summary Description.

3   Furthermore, the Plan, to which the patient is a subscriber, expressly contemplates the act(s)

4   which ELAP performed.  Namely, ELAP is entitled and authorized to perform certain duties,

5   which include the ability to do the following:

6       2.  To determine all questions of eligibility, status and coverage under the Plan;

7       3.  To interpret the Plan, including the authority to construe possible ambiguities, inconsistencies, omissions and disputed

8         terms;
    4.  To make factual findings;

9       5.  To decide disputes which may arise relative to a Plan Participant's rights;

10      6.  To review referred Appeals and to uphold or reverse any denials;... [Exhibit **A**, Plan Document, p. 4, at Graham Decl.]

11

12      The "Claim Review and Audit Program" section in the Plan document, clearly states that

13  ELAP, as the Designated Decision Maker, has been authorized to perform a "claim review and

14  auditing in order to identify charges billed in error, charges for excessive or unreasonable fees

15  and charges for services which are not medically appropriate."  [Exhibit **A**, Plan Document, p.

16  63, at Graham Decl.]    Thus, ELAP had every right under its proscribed duties and

17  responsibilities to review claims, and it cannot incur any liability in connection with performance

18  of its authorized duties.

19      Even if plaintiff could surmount these hurdles defeating a breach of contract claim, the

20  Complaint is entirely preempted under ERISA, as explained below.

21  V.

22  **ERISA PREEMPTS ALL ASPECTS OF STATE CLAIMS "RELATED TO" PLAN**

23  A.    **ERISA Governs Ennis' Employee Benefit Plan**

24      The Employee Retirement Income Security Act of 1974 (ERISA) governs all employee

25  benefit plans.  29 U.S.C. §1003(a).  ERISA was designed "to provide a uniform regulatory

26  regime over employee benefit plans" as well as to protect the interests of participants in

27  employee welfare benefit plans by establishing standards of conduct for administrators of those

28  plans.  *Aetna Health Inc. v. Davila*, supra, 542 U.S. at 208.  29 U.S.C. §1001(a),(b).  ERISA

11

1  defines an "employee welfare benefit plan" as "'any plan, fund, or program ... established or

2  maintained by an employer ... for the purpose of providing for its participants or their

3  beneficiaries, through the purchase of insurance or otherwise, medical, surgical, or hospital care

4  benefits...'"  29 U.S.C. §1002(1).  *Kanne v. Connecticut General Life Ins. Co.* (9th Cir. 1988)

5  867 F.2d 489, 491-492.

6          The Plan provided by Ennis, Inc. for its employees is an employee benefit plan, as

7  defined in 29 U.S.C. §1002(1) & (3).  Ennis Inc., Employee Benefit Plan is governed entirely by

8  ERISA, a fact which is reiterated throughout the Plan Document and Summary Description, as

9  demonstrated below:

10              "It is the intention of the Plan Sponsor, Ennis, Inc., to hereby amend and
               restate the Ennis, Inc., Employee Benefit Plan, a program of benefits
11              constituting a self-funded "Employee Welfare Benefit Plan" under the
               Employee Retirement Income Security Act of 1974 (ERISA) and any
12              amendments thereto."  [Exhibit **A,** Plan Document, p. 2, at Graham Decl.]

13          Additionally, the Plan Document includes a section entitled, "Statement of ERISA

14  Rights," which outlines, the plan participant's or beneficiary's rights and protections provided

15  under ERISA.  [Exhibit **A**, Plan Document, p. 8, at Graham Decl.]  The Plan further outlines the

16  Procedures for Claims and Appeals regarding payment of benefits in great detail, explaining

17  what is required for submitting a claim, the process of the claims determination as well as the

18  notification process regarding the outcome of the benefit determination and appeals process.

19  [Exhibit **A**, Plan Document, p. 65-70, at Graham Decl.]

20          There can be no dispute that the "Patient" in this case received health care benefits and

21  medical services pursuant to a group benefit plan, which was maintained and established by an

22  employer under a qualified ERISA plan.  Consequently, Ennis' group plan is subject to the

23  provisions of ERISA and entirely governed by ERISA.

24  **B.**     **General Statutory Basis of ERISA Preemption**

25          ERISA includes expansive preemption provisions and those civil enforcement provisions

26  are embodied in the federal statute 29 U.S.C. §1132 *et. seq.*.  The United States Supreme Court

27  has ruled that ERISA broadly preempts state law claims that relate to ERISA-governed plans.

28  *Pilot Life Ins. Co. v. Dedeaux* (1987) 481 U.S. 41, 47.  The Ninth Circuit has reiterated that:

> [C]ourts have found preemption if (1) the state law claims address areas of exclusive federal concern, such as the right to receive benefits under an ERISA plan; and (2) the claims directly affect the relationship among the traditional ERISA entities (the employer, the plan and its fiduciaries, and the participants and beneficiaries).

*Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters* (9th Cir. 2007) 497 F.3d 972, 979.

There are two distinct types of ERISA preemption. The first type is found in the comprehensive civil enforcement system imbedded in §502(a) of ERISA as set forth in 29 U.S.C. §1132(a). This section authorizes a plan participant or beneficiary to bring suit to recover plan benefits that have been denied, enforce their rights under the plan, or clarify any rights to future benefits under the plan. 29 U.S.C. §1132(a)(1)(B). In *Pilot Life Ins. Co. v. Dedeaux*, supra, 481 U.S. 41, the Supreme Court outlined the basic principles of §502(a) preemption, holding that §502(a) must be "the exclusive vehicle for actions by ERISA-plan participants and beneficiaries asserting improper processing of a claim for benefits...." *Id.* at 52. Further, the Supreme Court emphasized that ERISA preempts any state law cause of action that would expand upon the remedies available under §502(a). *Id.* at 54-56; *see also Ingersoll-Rand Co. v. McClendon* (1990) 498 U.S. 133, 143-45. The Supreme Court's decision in *Aetna Health Inc. v. Davila*, supra, 542 U.S. 200, left the scope of ERISA preemption under §502(a) perfectly clear: state law claims stemming from the denial of benefits under an ERISA plan are invariably preempted by ERISA.

The second, and much broader standard for ERISA preemption stems from the explicit preemption clause established in §514(a) of ERISA, which provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan...." 29 U.S.C. §1144(a). The Supreme Court has consistently noted that ERISA's preemption clause is "conspicuous for its breadth" and encompasses any state laws that "relate to" an ERISA plan. *FMC Corp. v. Holliday* (1990) 498 U.S. 52, 58.

## C.   ERISA Preempts All Claims "Relating To" An Employee Benefit Plan

Congress intended for all claims that "relate to" an employee benefit plan under ERISA brought in state court to be completely preempted by federal law. *See Metropolitan Life Ins. Co. v. Taylor* (1987) 481 U.S. 58 (holding that state contract and tort claims for improper processing

13

1    of disability claim and wrongful termination were completely preempted by and within civil

2    enforcement provisions of ERISA). *Aetna Health Inc. v. Davila*, supra, 542 U.S. 200.  Because

3    plaintiff Twin Cities' claims are based on an alleged payment/reimbursement for medical

4    benefits under an ERISA plan, they are by definition, preempted by the exclusive ERISA

5    enforcement mechanism for such claims.  Consequently, the Complaint should be dismissed.

6      Federal courts have repeatedly held that where claims "relate to" the administration of an

7    ERISA plan, preemption under §514(a) applies despite the manner in which a plaintiff

8    characterizes those claims.  The Supreme Court's efforts at interpreting the "relate to" language

9    in § 514(a) have yielded the following two-part test:  A law "relates to" a covered employee

10   benefit plan governed by ERISA if it has (1) a connection with or (2) reference to such a plan.

11   *Shaw v. Delta Air Lines, Inc.* (1983) 463 U.S. 85, 96-97;  *California Div. of Labor Standards*

12   *Enforcement v. Dillingham Constr., N.A., Inc.* (1997) 519 U.S. 316, 324.

13     The Ninth Circuit Court of Appeals has utilized this test when addressing federally

14   preempted claims.  "Generally speaking, common law claim "relates to" an employee benefit

15   plan governed by ERISA "if it has a connection with or reference to such a plan." *Providence*

16   *Health Plan v. McDowell* (9th Cir. 1999) 385 F.3d 1168, 1171;  *Blue Cross of Cal. v. Anesthesia*

17   *Care Assocs. Med. Group, Inc.*, (9th Cir. 1999) 187 F.3d 1045, 1052.  In evaluating whether a

18   common law claim has a "connection with" a plan governed by ERISA, the court is to evaluate

19   whether the action has a genuine impact on a relationship governed by ERISA, such as the

20   relationship between the plan and a participant.  *Abraham v. Norcal Waste Sys., Inc.* (9th Cir.

21   2001) 265 F.3d 811, 820-21; *Blue Cross of Cal.*, supra, 187 F.3d at 1052-53.  In evaluating

22   whether a common law claim has a "reference to" a plan governed by ERISA, the focus is

23   whether the claim is premised on the existence of an ERISA plan, and whether the existence of

24   the plan is essential to the claim's survival.  If so, a sufficient "reference" exists to support

25   preemption.  *Dillingham Constr., N.A., Inc.*, supra, 519 U.S. at 324-25; *Providence Health Plan*

26   *v. McDowell*, supra, 385 F.3d at 1172.

27     The Ninth Circuit Court of Appeals elucidated a very clear test for determining whether

28   state law claims "relate to" an ERISA plan in *Bui v. American Telephone and Telegraph, Inc.*

14

1    (9th Cir. 2002) 310 F.3d 1143.   There, an ERISA plan beneficiary brought claims against a

2    health care provider affiliated with his ERISA plan for providing him with negligent medical

3    advice and against the ERISA plan administrator for negligently selecting and retaining the

4    health care provider. *Id.* at 1145, 1149.  The plan administrator filed a motion to dismiss the

5    claims against it on the basis of ERISA preemption, which the District Court granted.  *Id.* at

6    1152.

7            Affirming the District Court's ruling, the Ninth Circuit concluded that ERISA preempts

8    "administrative decisions made in the course of administering an ERISA plan." *Id.* at 1146.  The

9    Court noted:

10           "Under any of the tests for determining ERISA preemption applied by this
             court, it is clear that ERISA preempts suits predicated on administrative
             decisions.  Subjecting such decisions to an individual state's laws would
11           subvert the intent of Congress to allow for the uniform administration of
             ERISA benefits in three ways: by requiring administrators to follow many
12           state laws instead of one federal law; by interfering with the relationship
             between ERISA administrators and beneficiaries; and by providing an
13           alternative enforcement mechanism for beneficiaries to obtain benefits."

14

15   *Id.* at 1148.

16           Thereafter, the *Bui* Court restated the fundamental principle of preemption under §514(a)

17   that must be applied to the claims at issue in this case: "…if a claim involves an administrative

18   decision made in the course of administering an ERISA plan, ERISA preempts it. *Id.* at 1149.  In

19   short, if the adjudication of a claim requires no interpretation of an ERISA plan, no distribution

20   of benefits, and no dispute regarding any benefits previously paid, a claim does not relate to an

21   employee benefit plan.  *Peralta v. Hispanic Bus., Inc.* (9th Cir. 2005) 419 F.3d 1064, 1069.

22   However, where a claim requires interpretation of an ERISA plan or law, ERISA preemption

23   exists. *Id.*

24   **D.    <u>Plaintiff's Claim Necessarily Relates to and Requires Interpretation of Defendant's</u>**

25        **<u>Employee Benefit Plan</u>**

26           Application of the *Bui* standard, which is that "ERISA preempts any claim challenging an

27   administrative decision made in the course of administering an ERISA plan" to the claims

28   asserted by Twin Cities demonstrates that these claims impermissibly "relate to" the

                                                      15

1  administration of Ennis' ERISA-qualified employee benefit plan and are preempted.  Plaintiff's

2  breach of contract and other related claims unequivocally "relate to" an ERISA plan because

3  they are based on defendants' allegedly improper denial of benefits under an ERISA-qualified

4  plan.  This action is also entirely preempted because it will require the court to interpret the terms

5  of Ennis' ERISA benefit plan.

6      Presumably, Twin Cities will argue that the state law claims relating to an alleged breach

7  of contract brought to enforce the reimbursement provision of Ennis' benefit Plan do not "relate

8  to" the plan itself.  Any such contention by Twin Cities, on its face, would appear to fail.  How

9  could an action to enforce the terms of a plan not relate to the plan itself?  The alleged wrongful

10  denial of benefits is only wrongful if defendants erred in their interpretation of the health

11  coverage plan.  *Porter et al. v. Anthem Health Plans* of Kentucky (USDC, Eastern District,

12  Kentucky, March 18, 2010) Civil Action No. 10-8-HRW, Memorandum of Opinion and Order,

13  p.6.  In other words, this case involves the interpretation of Ennis' employee benefit plan under

14  ERISA.

15      Twin Cities' claims are based on defendant's denial of coverage and/or certain benefits.

16  Had defendants not determined that there was limited coverage or some exclusion based on the

17  maximum allowable claim limits for the services rendered by Twin Cities [Exhibit **C**,

18  Explanation of Benefits, at Graham Decl.] there would be no complaint by the plaintiff.  The

19  damages Twin Cities seeks to recover by way of its submitted charges are indeed ERISA

20  benefits and a determination as to any breach or wrongful act can only be determined by

21  reference to the very terms of the ERISA plan at issue.

22      In particular, Group & Pension Administrators, the defendant third party plan

23  administrator's March 11, 2009 correspondence reiterates that the plaintiff's benefit denial was

24  made "in accordance with the terms of the Claim Review and Audit Program provisions of the

25  Plan".  [Exhibit **D**, Letter to Plaintiff Regarding Appeal Rights Under ERISA, at Graham Decl.]

26  The letter explains the reason for the benefit denial noting that "the charges that are being denied

27  [were] due to apparent billing errors or charges which exceed this Plan's Allowable Claim

28  Limits.  The Allowable Claim limits represent the Plan's internal rules, guidelines and protocols

16

1   relied upon in the determination." *Id.* Thus, the basis for plaintiff's claim determination requires

2   reference and interpretation of that very Plan.

3   Because plaintiff Twin Cities' claim is wholly predicated on an administrative decision

4   regarding coverage and/or reimbursement of benefits under the Plan, there can be no question

5   that the claims "relate to" Ennis' ERISA Plan as well as the roles and functions of the various

6   defendants in administering, managing or auditing Ennis' employee benefit plan. Presumptively

7   then, any action taken by ELAP with respect to auditing bills or charges is related to the

8   administration of Ennis' employee benefit plan. Any action undertaken by GPA, a third party

9   administrator to the Plan, necessarily relates to the Plan itself. Accordingly, this action impinges

10  upon the administration of the Plan, and would be expected to have a significant impact on the

11  ability of the employer to properly administer it.

12  Calculation of any benefit and amount owed to Twin Cities would require a benefit

13  determination under the ERISA Plan. The Plan's terms are controlling here, and set out specific

14  criteria for determination of benefit claims based on services provided. Explicit guidelines

15  pertaining to Allowable Claim Limits for a hospital is outlined in the Plan Document as follows:

16  "Hospital. The Allowable Claim Limit for charges by a Hospital facility
    … will be based upon 112% of the Hospital's most recent departmental
    cost ratio, reported to the Centers for Medicare and Medicaid Services…"
17  [Exhibit **A**, Plan Document, p. 63, at Graham Decl.]

18

19  What is required for this determination is not a mere consulttaion of the ERISA Plan, but

20  constitutes a comprehensive interpretation of the Plan terms sufficient to bring the clams within

21  the scope of §§ 502(a) as well as 514(a). Any conclusion to the contrary runs afoul of the

22  principles of preemption laid out in *Davila*. Because all of plaintiff's claims relate to the

23  employee benefit plan and would require interpretation of the plan, those claims are expressly

24  preempted by ERISA and this action must be dismissed.

25  **E.**   **Plaintiff's Appeal Based On A Denial Of Benefits Belies The Question Of ERISA's**

        **Applicability**

26

27  The Court in *Davila* established that an actual payment to the provider creates an

28  assignment of benefits, thereby endowing the provider with standing to bring an ERISA claim.

17

1   Here, it is noteworthy that this provider, Twin Cities, actually has standing to assert ERISA

2   rights under the Plan, and did so.  Plaintiff is estopped from complaining ERISA does not goven

3   these claims and cannot now disavow the applicability of ERISA to this benefit denial in an

4   attempt to circumvent its civil enforcement scheme.  It must be presumed that plaintiff thought

5   ERISA applied to its request for reimbursement, otherwise it would not have filed an appeal.

6       As explained *supra,* while plaintiff has no standing to sue based on a breach of contract

7   claim, Twin Cities is indeed, a "beneficiary" who has standing to sue under ERISA.  "By

8   submitting claims for payments, plaintiff has taken assignments of benefits under ERISA based

9   benefits plans.  Thus, plaintiffs have standing to bring an ERISA claim." *Porter et al. v. Anthem*

10  *Health Plans* of Kentucky, Memorandum of Opinion and Order, p.4, citing *Cromwell v. Equicor-*

11  *Equitable HCA Corp.*(6th Cir. 1991) 944 F.2d 1272; *Kennedy v. Connecticut General Life*

12  *Insurance Company* (7th Cir. 1991) 924 F.2d 698.

13      Irrespective of whether an assignment had been made, plaintiff had ERISA rights and

14  provider rights and submitted its charges or claim for benefits.  In response, the defendant

15  administrator of the Plan issued an Explanation of Benefits setting out why certain charges

16  submitted by Twin Cities were denied.  [Exhibit **C**, Explanation of Benefits, at Graham Decl.]

17  For example, one explanation of the codes used specifically indicates that charges "exceed the

18  plan's allowable claim limits" and were "denied as stated in the exclusions and limitations" in

19  the Plan Document. *Id.*

20      The defendant plan administrator's letter regarding a denial of Twin Cities claim for

21  benefits not only explained plaintiff's appeal right under the Plan, but provided specific

22  information to Twin Cities about the procedural aspects for requesting an appeal.  [Exhibit **D**,

23  Letter to Plaintiff Regarding Appeal Rights Under ERISA, at Graham Decl.]

24      It is salient that Twin Cities did indeed availed itself of its right to institute an appeal

25  based on a denial of benefits.  The May 21, 2009 1st Level Appeal by plaintiff Twin Cities, states

26  that the letter "serve[s] as a formal appeal in response to the ...claim." [Exhibit **E**, Plaintiff's

27  Level 1 Appeal, p. 1, at Graham Decl.]  It cannot be understated here that plaintiff *voluntarily*

28  submitted to the first level of an appeal in accordance with defendants' Claim Review and Audit

1  Program established under an ERISA governed benefit plan.  [See, Exhibit **A**, Plan Document, p.

2  68.]  It is axiomatic that if plaintiff thought ERISA did not apply to the denial of benefits that it

3  would not have initiated an ERISA appeal.

4      After making the first level of appeal as required under the ERISA plan, plaintiff then

5  diverged from the appeal process by filing suit under a theory based on a breach of contract.

6  Despite these tactics however, the payment claims submitted by Twin Cities and the Level 1

7  Appeal undertaken by this plaintiff implicate a coverage determination under the Plan and thus a

8  federal issue under ERISA.  The fact that plaintiff appealed underscores the fact that this case is

9  fundamentally a denial of benefits claim under ERISA.  The fact of an appeal is also an outright

10 admission evidencing the applicability of ERISA to this determination.

11     Defendants contend that this case could have been brought under ERISA.  Plaintiff

12 incorrectly believes that this is not an ERISA case, but rather, a breach of contract matter and has

13 pled various state law claim relating to a contractual breach.  Nevertheless, the Complaint need

14 not include the term "ERISA" at all.  Complete preemption means that if the claim could have

15 been brought under ERISA, it is preempted by ERISA.

16     Even if plaintiff could establish the existence of a direct provider contract with Ennis, as

17 in *Davila,* "the existense of a provider contract does not, in and of itself, create an independent

18 legal duty for defendants to make payments" to Twin Cities.  *Porter,* supra, at p. 5.  "What is

19 payable, and, more importantly, what is not payable or a covered benefit is defined by the terms

20 of the benefit plans and, thus, governed by ERISA." *Id.*

21 **F.**    **No Independent Obligation Or Duty Exists To Override ERISA Preemption**

22     If an individual or entity at some point, "could have brought a claim under ERISA

23 §502(a)(1)(B), and where there is no other independent legal duty that is implicated by

24 defendant's actions, then the cause of action is completely preempted." *Davila,* supra, 542 U.S.

25 at 210.  The ERISA preemption question turns on whether the any provider agreement (here,

26 there is none between plaintiff and defendants) creates a legal duty "independent" of the ERISA

27 Plan, a duty to pay a specified contractual rate for services rendered under the ERISA Plan.  In

28 this case, the Plan Administrator is permitted to reduce any charges in excess of Allowable

19

1   Claim Limits and the the claims themselves are subject to review and/or audit to ensure that

2   charges are payable in accordance with the terms and limitations of the Plan.  In fact, the Plan

3   Document states that a determination of Allowable Claim Limits under the Claim Review and

4   Audit Program "will supersede any Plan provisions related to the application of a Usual &

5   Customary fee determination." [Exhibit **A**, Plan Document, p. 63, at Graham Decl.]

6          Any reliance by plaintiff on state law breach of contract cases for which complete

7   preemption under ERISA was not upheld, do not apply to the fact scenario before this court.  It is

8   anticipated for example, that plaintiff may argue that a breach of contract claim is viable against

9   an ERISA preemption defense where a medical provider brings suit against a health plan for

10  reimbursement, as was the case in *Blue Cross of California v. Anesthesia Care Associates*

11  *Medical Group, Inc.* (9th Cir. 1999) 187 F.3d 1045.  There, medical providers brought a lawsuit

12  against Blue Cross for breach of contract under their provider agreements because they

13  contended Blue Cross improperly changed the fee schedule according to which providers were to

14  be compensated. *Id.* at 1048.

15         *Blue Cross* is distinctly different however.  The Ninth Circuit held that the providers'

16  claims arose from fee **agreements** between the providers and Blue Cross, not between Blue

17  Cross and the patients (who were the plan participants or beneficiaries), and therefore ERISA did

18  not govern enforcement of those rights. *Blue Cross*, supra, 187 F.3d at 1050.  In the case at bar,

19  no such fee agreement or contractual agreement exists between Twin Cities and any of the

20  defendants.  The Ninth Circuit also held that the medical providers' state law claims did not

21  encroach on any relationship governed by ERISA, because the providers' claims against Blue

22  Cross did not concern the fiduciary duties of Blue Cross *vis-a-vis* a plan participant or

23  beneficiary. *Id.* at 1053-1054.  "The Providers' claims concern only **promises** that Blue Cross

24  made as a health care plan provider to its participating physicians." *Id.* at 1054. [Emphasis

25  added.]  This is not the case here.  No promises were made to Twin Cities.  Moreover, Twin

26  Cities' claim directly impinges on defendants' fiduciary ability to administer the benefit plan on

27  behalf of the plan participant.

28         It is also anticipated that plaintiff will point to the recent Ninth Circuit case of *Marin*

20

1   *General Hosp. v. Modesto & Empire Traction Co.* (9th Cir. 2009) 581 F.3d 941, to stand for the

2   proposition that a hospital's suit against an ERISA plan administrator seeking payment of a

3   patient's surgical expenses, and alleging state-law claims for breach of implied contract, and

4   breach of oral contract, among others, is not completely preempted by the civil enforcement

5   provision of ERISA.  In that case however, the claims arose out of a telephone conversation in

6   which the plan administrator allegedly agreed to pay Marin General Hospital 90 percent of the

7   patient's expenses.  *Id.* at 943.

8           As in *Blue Cross,* Marin General Hospital was not suing defendants based on any

9   assignment from the patient of his rights under his ERISA plan pursuant to §502(a)(1)(B), but

10  instead, brought suit in its own right pursuant to an independent obligation.  *Marin General*

11  *Hospital,* supra, 581 F.3d at 948.

12          The court in *Marin General Hospital,* analyzed the question of a contractual breach by

13  examining whether the claim relied on a legal duty which arose independently of ERISA.  The

14  court explained that though there was no independent legal duty imposed under state law in

15  *Davila,* in *Marin General Hospital,* by contrast, the hospital argued that defendant entered into

16  an independent oral contract during a telephone call.  "The various state-law claims asserted by

17  the Hospital all arise out of what was allegedly said during that call."  *Id.* at 950.  The Court's

18  reasoning and conclusion is based on this agreement between the entities, which creates a

19  independent duty.  The Court explained this duty in relation to ERISA preemption:

20          "The question under the second prong of Davila is whether the complaint
            relies on a legal duty that arises independently of ERISA.  Since the state-
21          law claims asserted in this case are in no way based on an obligation under
            an ERISA plan, and since they would exist whether or not an ERISA plan
22          existed, they are based on "other independent legal dut[ies]" within the
            meaning of Davila."

23  *Marin General Hosp. v. Modesto & Empire Traction Co.*, supra, 581 F.3d at 950.

24          The Ninth Circuit's decision that the Hospital's state-law claims based on its alleged oral

25  contract with the ERISA plan administrator were based on an independent legal duty, and thus

26  not preempted by ERISA, are not analogous here.  The stark difference in *Marin General*

27  *Hospital* and the case at bar was the existence of a contract.  In this present matter, no such

28  contract exists.  Thus, plaintiff Twin Cities cannot assert as the basis of its claim, an independent

                                                    21

1 | legal duty on the part of defendants.

2 |      At bottom, even if assuming that Twin Cities' claims for reimbursement are not "claims

3 | for benefits" subject to ERISA's civil enforcement provision, they are nonetheless, barred, since

4 | no independent legal duty can be established and no breach of contract occurred where no

5 | contract was ever formed with plaintiff.

6 | **VI.**

7 | **CONCLUSION**

8 |      Summary judgment is proper, since plaintiff lacks standing to assert a contractual breach.

9 | Plaintiff is not a party nor has any rights as a third party beneficiary to any contract involving

10 | defendants.  Furthermore, no breach occurred under these circumstances.  Plaintiff is essentially

11 | attacking the manner in which Ennis administered benefits through its Plan as well as the manner

12 | in which the administrative functions were performed by the other defendants, who have a

13 | specified role in the administration of the Plan.  All of defendants' roles and acts "relates to" the

14 | administration and management of an employee welfare benefit plan, and they are preempted by

15 | §514(a) of ERISA.  As such, plaintiff fails to state a claim upon which relief can be granted and

16 | this action must be dismissed in its entirety.

17 | Dated: February 28, 2011

Respectfully submitted:

18 | /s/ Carol A. Treasure

19 | Derek S. Davis
Carol A. Treasure

20 | COOPER & SCULLY, P.C.
100 California Street, Suite 850

21 | San Francisco, CA  94111
Email: derek.davis@cooperscully.com

22 | Email: carol.treasure@cooperscully.com
Tel:  (415) 956-9700 / Fax: (415) 391-0274

23 |

24 | Attorneys for Defendants
ENNIS INC., GROUP & PENSION

25 | ADMINISTRATORS, INC., and, ELAP, INC.

26 |

27 |

28 |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I hereby certify that on February 28, 2011, I electronically submitted the foregoing document with the clerk of the court for the U.S. District Court, Central District of California, using the electronic case files system of the court.   The electronic case files system sent a "Notice of Electronic Filing" to individuals who have consented in writing to accept this Notice as service of this document by electronic means.  All other counsel or record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by first class mail today, February 28, 2011.


/s/ Carol A. Treasure
Carol A. Treasure

Memorandum of Points and Authorities in Support of Motion for Summary Judgment
USDC Central No. 2:11-cv-00113-SVW-VBK