**HELTON LAW GROUP**
**A PROFESSIONAL CORPORATION**
CARRIE S. MCLAIN (State Bar No. 181674)
Email: cmclain@heltonlawgroup.com
KELLY A. MAHONEY (State Bar No. 246540)
Email: kmahoney@heltonlawgroup.com
ATTORNEYS AT LAW
401 East Ocean Boulevard, Suite 1010
Long Beach, California 90802
TELEPHONE: (562) 901-4499
FACSIMILE: (562) 901-4488

RECEIVED
BUT
NOT FILED

APR   8 2011

CLERK, U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
BY                DEPUTY

ATTORNEYS FOR PLAINTIFF TWIN CITIES COMMUNITY HOSPITAL, INC.

FILED
CLERK, U.S. DISTRICT COURT

APR - 8 2011

CENTRAL DISTRICT OF CALIFORNIA
BY                DEPUTY

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TWIN CITIES COMMUNITY HOSPITAL, INC., a California Corporation,<br><br>                    Plaintiff,<br><br>   vs.<br><br>ENNIS, INC. doing business as ENNIS INC. EMPLOYEE BENEFIT PLAN, a Texas Corporation; GROUP & PENSION ADMINISTRATORS, INC. doing business as G&P ADMINISTRATORS, INC. a Texas Corporation; ELAP, INC. a Pennsylvania Corporation; and, COVENTRY HEALTH CARE, INC. a Delaware Corporation, FIRST HEALTH GROUP CORP. a Delaware Corporation DOES 1 through 10, inclusive,<br><br>                    Defendants. | Case No: 2:11-cv-00113-SVW -VBK<br><br>ASSIGNED TO: HON. STEPHEN V. WILSON<br><br>UNLIMITED - DAMAGES IN EXCESS OF $25,000<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES FOR:**<br><br>1.  **BREACH OF WRITTEN CONTRACT AS TO ENNIS**<br>2.  **BREACH OF IMPLIED CONTRACT**<br>3.  **BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING AS TO ENNIS**<br>4.  **NEGLIGENT MISREPRESENTATION**<br>5.  **QUANTUM MERUIT**<br>6.  **ACCOUNT STATED**<br>7.  **NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS**<br>8.  **ECONOMIC INTERFERENCE – INDUCING BREACH OF CONTRACT**<br>9.  **BREACH OF WRITTEN CONTRACT AS TO COVENTRY DEFENDANTS**<br>10. **BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING AS TO COVENTRY DEFENDANTS** |

1

FIRST AMENDED COMPLAINT FOR DAMAGES

TO ALL INTERESTED PARTIES AND THEIR ATTORNEYS OF RECORD:

## **PRELIMINARY ALLEGATIONS**

1.      "Jurisdiction" -   Plaintiff TWIN CITIES COMMUNITY HOSPITAL, INC. is a corporation incorporated under the laws of  the State of California having its principal place of business in the State of California.  Defendant ENNIS, INC. doing business as ENNIS INC. EMPLOYEE BENEFIT PLAN is a corporation incorporated under the laws of the State of Texas having its principal place of business in the State of Texas. Defendant GROUP & PENSION ADMINISTRATORS, INC. doing business as G&P ADMINISTRATORS, INC. is a corporation incorporated under the laws of the State of Texas having its principal place of business in the State of Texas. Defendant ELAP, INC. is a corporation incorporated under the law of the State of Pennsylvania having its principal place of business in Pennsylvania. Defendant COVENTRY HEALTH CARE, INC. is a corporation incorporated under the laws of the State of Delaware having its principal place of business in State of Maryland.   Defendant FIRST HEALTH GROUP, CORP. is a corporation incorporated under the laws of the State of Delaware having its principal place of business in State of Maryland. Jurisdiction of this Court is predicated under 28 U.S.C. section 1332 as the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

///

FIRST AMENDED COMPLAINT FOR DAMAGES

2.    Venue is proper in the United States District Court for the Central District of California as the claims arose in this Judicial District and Plaintiff resides in this Judicial District.

3.    Plaintiff TWIN CITIES COMMUNITY HOSPITAL, INC. is a California corporation, with its principal place of business in the County of San Luis Obispo, in the State of California.  The HOSPITAL is a California licensed acute-care hospital located in the City of Templeton.

4.    The Hospital is informed and believes Defendant ENNIS, INC. doing business as ENNIS, INC. EMPLOYEE BENEFIT PLAN ("Ennis") is a Texas Corporation doing business in the State of Texas.

5.    The Hospital is informed and believes Defendant GROUP & PENSION ADMINISTRATORS, INC. doing business as G&P ADMINISTRATORS, INC. ("GPA") is a Texas Corporation doing business in the State of Texas.

6.    The Hospital is informed and believes Defendant ELAP, INC. ("ELAP") is a Pennsylvania Corporation doing business in the State of Pennsylvania.

7.    Defendant COVENTRY HEALTH CARE, INC. ("Coventry") is a Delaware corporation, organized and existing under the laws of the State of Delaware with its principal place of business in the city of Baltimore, County of Baltimore, in the State of Maryland.  Coventry is in the business of entering into written contracts with healthcare providers such as the Hospitals on behalf of "Payors" which are insurance

carriers and/or health care service plans offering healthcare insurance coverage to plan participants.

8.     Defendant FIRST HEALTH GROUP CORP., ("First Health"), a Delaware Corporation with its principal place of business in the city of Baltimore, County of Baltimore, in the State of Maryland.  First Health provides health care benefit plans and related services to participants in California.

9.     Plaintiff is informed and believe that Defendant Coventry owns and controls Defendant First Health.  Coventry and First Health are collectively referred to as ("the Coventry Defendants.")

10.     Plaintiff Hospital is unaware of the true names, identities, and capacities of Defendants sued herein as Does 1 through 10, inclusive, and each of them as based thereon, sues said Defendants by such fictitious names.  When their true names and capacities are ascertained, Plaintiff will amend this complaint by inserting their true names and capacities herein.  The Hospital is informed and believes and thereon alleges that each of the fictitiously named defendants is responsible in some manner for the occurrences alleged herein, and that the Hospital's damages as alleged herein were proximately caused by those defendants.

11.     The Hospital is informed and believes and thereon alleges that at all times mentioned herein, each of the Defendants (with the exception of ELAP, Inc.), including all Defendants sued under fictitious names, were the agent and/or employee of each of

the remaining Defendants, and in so doing the things alleged herein, were acting within the scope of his or her agency and employment.

## THE AGREEMENT BETWEEN THE HOSPITAL
## AND THE COVENTRY DEFENDANTS TO WHICH
## ENNIS IS ENTITLED TO ACCESS

12.    The Hospital entered into the Participating Hospital Agreement (the "Agreement") effective on or about February 1, 2008 with Coventry Defendants to provide hospital services to Coventry Products.    Coventry Defendants are in the business of entering into contracts with providers such as the Hospital on behalf of Payors.    The Agreement defines "Payor" as an entity authorized by Coventry or a Coventry Company to access one or more networks of Participating Providers (such as the Hospital) and who or which is financially liable to pay for hospital services rendered to a member. Further, Payors are required to abide by all the terms of the Agreement.    Due to confidentiality concerns, the Agreement will be made available at Defendants' request and after a protective order has been signed by both parties.

13.    The Agreement requires the Hospital to agree to participate in two categories of products: 1) "Coventry Products" and 2) "First Health Products."    First Health Products are further defined as including a Network Lease product which

///

includes Third Party Administrators, large employers, or insurance carriers who are interested in securing access to Coventry Company networks.

14.    Ennis is a Payor as defined in the Agreement and at all relevant times appears on the Payor List.  Pursuant to the Agreement Ennis is required to abide by all the terms of the Agreement.   Hospital is informed and believes Ennis entered into an agreement with First Health and/or Coventry in order to gain access to the discounted rates in the Agreement.

15.    Pursuant to the terms of the Agreement, the Hospital is obligated to provide hospital services at discounted rates to Ennis employees.  In turn, Ennis is obligated to comply with the terms of the Agreement, including reimbursing the Hospital for such Hospital services.

16.    The Coventry Contracts also provide that in order for the Coventry Defendants to lease access to the network and as a condition of any Payor being permitted access to the discounts included in the Agreement, Coventry Defendants were obligated to warrant that Payors, such as Ennis, comply with all payment terms and obligations under the Agreement.

17.    The Agreement also provides that if a Payor fails to abide by the terms of the Agreement, and the issue remains unresolved for a certain period of time, the Payor shall no longer be entitled to the discount provided in this Agreement.

///

18.     The Hospital is informed and believes the Coventry Defendants failed to take steps to ensure that Ennis complied with the terms of the Agreement, in breach of the Agreement.

## SPECIFIC ALLEGATIONS AS TO THE PATIENT

19.     From January 18, 2009 through February 4, 2009, the Hospital provided the Patient with treatment for medically necessary and physician ordered medical services.  Plaintiff is withholding the full name of the Patient in this Complaint to preserve the Patient's protected rights to privacy concerning health care information. The Patient's medical and claims information has been and will be made available to Defendant upon request.

20.     Upon admission, the Patient presented an insurance card that showed she had health insurance through her employer, Ennis, who had contracted with First Health to obtain access to discounted rates contracted between the Hospital and First Health.

21.     The Patient's insurance card indicated that GPA was the entity for the Hospital to call and obtain eligibility and benefits information on the Patient.  The Hospital is informed and believes that Ennis and GPA have entered into a contract whereby GPA administers Ennis' benefit plan including making eligibility and benefit determinations and payment of claims in conformance with the Agreement.  The Hospital is further informed and believes that GPA acts as Ennis' agent in regards to

the administration of Ennis' benefit plan.   The Hospital is further informed and believes that Ennis and/or GPA on Ennis' behalf entered into a written contract with ELAP thereby delegating certain claims processing functions to ELAP.

22.   From January 18, 2009 through January 20, 2009, the Hospital made numerous attempts to speak with someone at GPA; however, On January 20, 2009, the Hospital spoke with Lindsey and Denise from GPA.   Both confirmed the Patient's eligibility and benefits.   Later on January 20, 2009, Melissa from GPA provided treatment authorization number 0207449 for the Patient's hospitalization.   The Patient was discharged on February 4, 2009.

23.   On February 9, 2009, the Hospital submitted its bill to GPA per instructions from Ennis to do so for total charges in the amount of $485,050.62.   Under the Agreement's discounted reimbursement rate, the Hospital expected reimbursement from Ennis in the amount of $266,777.84.

24.   On or about March 31, 2009, Ennis acknowledged its obligations to pay the Hospital for the medical services provided to the Patient by paying through GPA a portion of the amount owed totaling $81,583.02, but denied payment for the additional amount as a result of a unilateral audit GPA and/or ELAP had performed that disallowed certain charges. The Patient was responsible for $1,329.35, leaving an unpaid balance of $183,865.47 Ennis is required to pay to the Hospital.

///

25.   On May 21, 2009, the Hospital sent a written appeal to GPA, informing GPA that its unilateral audit was in breach of the Agreement and $183,865.47 was still owed to the Hospital.  Despite this information, the Hospital's appeal was denied on June 19, 2009.

26.   On or around January 11, 2010, counsel for the Hospital sent a letter to Ennis through its agent GPA and First Health demanding that Ennis through its agent GPA and First Health honor the Agreement and pay the additional $183,865.47.  Ennis and/or GPA did not respond to this letter.  First Health did respond to the letter and agreed to send a letter to GPA and Ennis demanding they pay the additional $183,865.47.

27.   On or around January 21, 2010, counsel for First Health sent a letter to GPA and Ennis informing them that its audit was in violation of the payor agreement between First Health and Ennis dated January 1, 2008 whereby Ennis agreed not to audit or reduce the Hospital's billed charges based on usual and customary, "excessive markup", or other similar bill reduction methodology.  The letter further stated that GPA and/or Ennis was to pay the Hospital the $183,865.47 and that should GPA/Ennis refuse to make payment, the Hospital would be under no obligation to accept the discounted rate under the terms of the Agreement.

28.   To date, Defendants have failed to make any further payments.

///

9

29.     On or about June 19, 2009, Defendants breached the Agreement with respect to the Patient by refusing to pay the full amount due under the terms of the Agreement despite repeated appeals by the Hospital to Defendants for further payment.

### FIRST CAUSE OF ACTION

### BREACH OF CONTRACT

### (AS TO DEFENDANTS ENNIS AND DOES 1-10)

30.     Plaintiff re-alleges and incorporates herein by reference each and every allegation set forth above.

31.     At the time the Patient was admitted to the Hospital on January 18, 2009, the Agreement between First Health and Twin Cities Community Hospital was in place and Ennis was obligated to make payment in accordance with its terms as a payor thereto.    The Agreement provides for various payment schedules and discounts depending upon the type of medical goods and services provided to the Patient by the Hospital.

32.     The Hospital submitted its claim to Ennis through its agent GPA for the care and treatment provided to the Patient.  The Hospital expected reimbursement in the amount of $266,777.84 pursuant to the terms of the Agreement.

33.     However, Defendants breached the Agreement by incorrectly adjusting the payment and thereby underpaying the claim in the amount of $183,865.47.

///

34.   As a result of this breach under the Agreement, the Defendants are no longer entitled to pay the discounted rates contained therein.

35.   The Hospital performed all its obligations under the Agreement, including notifying Ennis through its agent GPA of the admission of the Patient and supplying full documentation to Defendants for the health care services and products it provided to the Patient.

36.   As a result of Defendants' failure to fulfill its contractual obligations in a reasonable, timely or competent manner, the Hospital has not been fully compensated for the significant health care services it provided to the Patient and has suffered damages as a result.

37.   The Hospital has attempted to resolve the dispute concerning the claim for the Patient several times.  Such attempts have been to no avail.

## SECOND CAUSE OF ACTION

## BREACH OF IMPLIED CONTRACT

### (AS TO DEFENDANTS ENNIS AND DOES 1-10)

38.   Plaintiff re-alleges and incorporates herein by reference each and every allegation set forth above.

39.   As alleged above, the Hospital believes it is entitled to full and complete payment from Ennis and/or Ennis' agent GPA in accordance with the contract set forth above.  However, to the extent the contract alleged above does not apply and/or is

deemed unenforceable against Ennis and/or GPA for any of the services at issue, and absent any other legally controlling rate, the Hospital alleges in the alternative that Ennis and/or GPA owes the Hospital for these services pursuant to an implied contract.

40.     On January 20, 2009, the Hospital contacted Ennis through its agent GPA, and spoke with Lindsey and Denise from GPA.  Both confirmed the Patient's eligibility and benefits.  Later on January 20, 2009, Melissa from GPA provided treatment authorization number 0207449 for the Patient's hospitalization.

41.     At no time during the Hospital's care and treatment of Patient did Ennis or GPA assert that Patient was not its insured, or indicate in any way to the Hospital that it would not cover Patient's medical expenses incurred by the Hospital.

42.     Said verification and authorization by Ennis through its agent GPA induced the Hospital to provide, or continue providing, care to Patient. Once Hospital acted in reliance on GPA's verification and authorization, a mutual agreement between Ennis through its agent GPA and the Hospital was formed, the terms of which were that the Hospital would care for and treat Patient, and in exchange, Ennis would cover the expenses incurred in such care and treatment.

43.     By providing the verification of benefits and authorization to the Hospital, Ennis through its agent, GPA, promised to pay and the Hospital relied on such promise for payment of the expenses incurred by the Hospital in its care and treatment of Patient.

44.    The Hospital performed all its obligations under its implied contract with Ennis, in that it cared for and treated Patient to the best of the Hospital's ability.

45.    Ennis, through is agent GPA, breached its implied contract with the Hospital on April 16, 2009 by issuing payment for $81,583.02 and refusing to fully pay the Hospital's claim for the charges incurred in providing medical services to Patient when it denied the Hospital's written appeal. By submitting partial reimbursement, Ennis, through it agent GPA, acknowledged its obligations to pay for the medical services provided by Hospital to Patient.

46.    As a result of Ennis' failure to fulfill its contractual obligations in a reasonable, timely or competent manner, the Hospital was not fully compensated for the significant health care services it provided to Patient and thus has been damaged in an amount to be proven at trial.

## THIRD CAUSE OF ACTION

## BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

## (AS TO DEFENDANTS ENNIS AND DOES 1-10)

47.    Plaintiff re-alleges and incorporates herein by reference each and every allegation set forth above.

48.    California law implies a covenant of good faith and fair dealing in all contracts between parties entered into in the State of California.

///

49.   At the time the Hospital submitted its bills to the Defendants for the medically necessary treatment and services it provided the Patient, the Agreement between the Hospital and the Defendants through First Health was in effect.   The implied contract with Ennis was also in effect.

50.   The Hospital provided medically necessary care and treatment to the Patient during the hospitalization and met its obligations under the Agreement and the implied contract including timely submitting its bills to the Defendants for the services rendered to the Patient.

51.   All the conditions required under the Agreement and the implied contract for the Defendants to fully reimburse the Hospital occurred.

52.   The Defendants unfairly interfered with the Hospital's right to receive the benefits of the Agreement and implied contract by failing to pay the Hospital the amount required by the Agreement after the Hospital provided medically necessary services to the Patient, relied on Ennis' representations and billed the Defendants for those services.

53.   The Hospital was harmed by the Defendants' conduct in an amount to be proven at trial and attorneys fees under the contract.

///

///

///

## **FOURTH CAUSE OF ACTION**

## **NEGLIGENT MISREPRESENTATION**

### **(AS TO DEFENDANTS ENNIS AND GPA AND DOES 1-10)**

54. Plaintiff re-alleges and incorporates herein by reference each and every allegation set forth above.

55. At the time the Patient was admitted to the Hospital, the Patient was a beneficiary of Ennis and its agent GPA.

56. At the time and during the Patient's admission, the Hospital contacted Ennis through its agent GPA who verified the Patient's benefits and authorized the Hospital's treatment.

57. From January 18, 2009 until February 4, 2009, the Hospital provided the Patient with treatment for medically necessary and physician ordered medical services.

58. This verification of the Patient's eligibility and benefits by Ennis through GPA was a representation that Ennis and/or GPA would cover the Patient's care and treatment for the subject admission, and this representation was not true. Ennis and/or GPA did not intend to cover the Patient's care and treatment for the subject admission. The verification provided by Ennis through its agent GPA's was made with no reasonable ground for believing that Ennis and/or GPA would cover such care and treatment even though the Patient had health insurance benefits with Ennis and/or GPA.

59.     Ennis through its agent GPA verified the Patient's eligibility and benefits with the intent that the Hospital should rely on such verification. Ennis and/or GPA knew that it would not cover the Hospital's care and treatment of the Patient.

60.     The Hospital relied on Ennis and/or GPA's verification.

61.     The total charges incurred during the Patient's stay were $485,050.62. Ennis and/or GPA has only reimbursed the Hospital $81,583.02 for these charges and designated $1,329.35 patient responsibility.

62.     As a result of the benefit conferred upon Ennis and/or GPA by the Hospital, the Hospital is entitled to damages for negligent misrepresentation in the amount of $485,050.62 less the $81,583.02 paid by Ennis and the $1,329.35 paid by the patient, for a total of $402,138.25.

63.     As a result of Defendants' negligent misrepresentation, the Hospital was not fully compensated for the significant health care services it provided to the Patient.

## FIFTH CAUSE OF ACTION

## QUANTUM MERUIT

### (AS TO DEFENDANTS ENNIS AND GPA AND DOES 1-10)

64.     Plaintiff re-alleges and incorporates herein by reference each and every allegation set forth above.

65.     By verifying the Patient's benefits with the Hospital and thereby representing to the Hospital that it should care for and treat the Patient as medically

16

necessary, Ennis and/or GPA both expressly and impliedly requested that the Hospital provide care and treatment to the Patient.

66.     As a result, the Hospital did indeed provide medical care and treatment to the Patient to the best of the Hospital's ability.

67.     The Hospital's provision of medical care and treatment to the Patient was intended to and, in fact, benefited Ennis and/or GPA in that the Patient received medical care and treatment which Ennis was obliged to provide to the Patient.

68.     The total charges incurred during the Patient's stay were $485,050.62. Ennis through its agent GPA has only reimbursed the Hospital $81,583.02 for these charges.

69.     As a result of the benefit conferred upon Ennis and/or GPA by the Hospital, the Hospital is entitled to quantum meruit damages in the amount of $485,050.62 less the $81,583.02 paid by Ennis and the $1,329.35 paid by the patient, for a total balance due of $402,138.25.

70.     The Hospital was not fully compensated for the significant health care services it provided to the Patient.

///

///

///

///

FIRST AMENDED COMPLAINT FOR DAMAGES

## SIXTH CAUSE OF ACTION

## ACCOUNT STATED

## (AS TO DEFENDANTS ENNIS AND DOES 1-10)

71.     Plaintiff re-alleges and incorporates herein by reference each and every allegation set forth above.

72.     As alleged above, the Hospital believes it is entitled to full and complete payment from Ennis and/or GPA in accordance with the contract set forth above. However, to the extent the contract alleged above does not apply and/or is deemed unenforceable against Ennis for any of the services at issue, and absent any other legally controlling rate, the Hospital alleges in the alternative that Ennis owes the Hospital for these services pursuant to an account stated.

73.     In the ordinary course of business, the Hospital sent invoices for the services at issue to the place that Ennis directed the Hospital to send those bills.  The bills are commonly referred to as UB-92's, or UB-04's, based on the form originated by the Medicare program, and now used routinely by all providers and payors, for stating bills.  The amounts stated on these bills by the Hospital are the billed charges for the services, which also is industry standard practice.  When there is a contract providing for a discounted rate, the payor can reprice the claim at the contract rate, instead of the billed charges rate.  There is no such discount contract rate in place between the parties in this dispute, thus billed charges are required to be paid by Ennis.

74.     Plaintiff submitted either appeal correspondence and/or spreadsheets regarding the disputed accounts.

75.     At all times herein mentioned the Hospital provided medically necessary services to Ennis' beneficiary.  Accordingly, Ennis became indebted to the Hospital in the amount set forth in the account stated, plus interest.

76.     Ennis acknowledged its obligation to pay the Hospital by making a partial payment in the amount $81,583.02.

77.     The Hospital and Ennis, through it agent GPA, engaged in a previous financial transaction whereby the Hospital provided medical services to Ennis' member and billed Ennis though its agent, GPA, for those services.

78.     As part industry custom and past practices, the Hospital and Ennis agreed that if no contract is applicable to this dispute, full billed charges are owed in the amount of $402,138.25.

79.     As part of industry custom and past practices, Ennis promised to pay full billed charges in the amount $402,138.25 to the Hospital should no contract be found applicable to this dispute.

80.     Ennis has not paid the Hospital $402,138.25 under this account.

81.     Ennis owes the Hospital $402,138.25 plus interest.

///

///

# SEVENTH CAUSE OF ACTION

## NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS

### (AS TO DEFENDANTS ELAP AND DOES 1-10)

82.     Plaintiff re-alleges and incorporates by reference each and every allegation set forth above.

83.     On or about March 11, 2009 and June 19, 2009, Ennis through its agent GPA informed the Hospital that it sent the Hospital's bill to a third-party entity, ELAP, for review.   Plaintiff is informed and believes ELAP provides business advisory services for the health care industry.  ELAP performed an audit of the charges on the Hospital's bill in violation of the Agreement and determined $402,138.24 in charges was non-billable.   Ennis decided it would reimburse the Hospital based on the difference between the full billed charges and the audit amount instead of based on the Agreement that Ennis was required to base its payment on.

84.     ELAP negligently interfered with the relationship between the Hospital and Ennis that would have resulted in an economic benefit to the Hospital.

85.     The Hospital and Ennis were in an economic relationship as described above that would have resulted in a future economic benefit to Hospital, specifically the timely payment of the Hospital's claim for providing services to the Patient pursuant to the Agreement.

86.     ELAP knew or should have known of this relationship between the Hospital and Ennis and knew or should have known that this relationship would be disrupted if they failed to act with reasonable care.

87.     ELAP failed to act with reasonable care and engaged in wrongful conduct through performing an improper audit, negligently determining the value of the Hospital's services provided to the Patient and disregarding the Hospital's Agreement with Ennis which prohibited such determinations.

88.     As a result of ELAP's actions, the relationship between the Hospital and Ennis has been disrupted and the Hospital has been harmed by Ennis' failure to reimburse the Hospital at the agreed upon rates.   ELAP's wrongful conduct was a substantial factor in causing the Hospital's harm.

## EIGHTH CAUSE OF ACTION

### ECONOMIC INTERFERENCE – INDUCING BREACH OF CONTRACT

### (AS TO DEFENDANTS ELAP AND DOES 1-10)

89.     Plaintiff re-alleges and incorporates by reference each and every allegation set forth above.

90.     The Hospital claims ELAP intentionally caused Ennis to breach its written contract with the Hospital.

///

///

91.     Plaintiff and Ennis entered into an Agreement through First Health as alleged above prior to services being provided to the Patient and the contract was in effect during all relevant dates of service.

92.     ELAP knew of the contract between the Hospital and Ennis yet performed the audit of the Hospital's bill in breach of said Agreement and reported to Ennis and/or GPA the amount they determined Ennis owed the Hospital despite knowing Ennis had contracted with the Hospital to pay the discounted rates contained in the Agreement for the services provided to the Patient.

93.     ELAP's audit and report to Ennis and/or GPA as to the reimbursement determination, which was not in compliance with the terms of the Agreement, caused Ennis to breach the written contract.

94.     The Hospital was harmed by ELAP's inducement of breach of contract and is owed an additional $402,138.25, plus interest as contractual damages for Ennis' breach.

95.     ELAP's conduct was a substantial factor in causing the Hospital's damages.

///

///

///

///

FIRST AMENDED COMPLAINT FOR DAMAGES

### NINTH CAUSE OF ACTION

### BREACH OF WRITTEN CONTRACT

### (AS TO COVENTRY DEFENDANTS AND DOES 1-10)

96.  Plaintiff re-alleges and incorporates by reference each and every allegation set forth above.

97.  At the time the Patient was admitted to the Hospital, the Agreement between the Hospital and the Coventry Defendants was in place and the Coventry Defendants were obligated to act in accordance with its terms.

98.  The Hospital performed all of their duties under these contracts.

99.  By allowing Ennis to become a Payor to the Agreement and failing to take steps to ensure that Ennis abided by the terms of the Agreement, the Coventry Defendants breached the Agreement.

100.  As a result of the Coventry Defendants' failure to fulfill the contractual obligations in a reasonable, timely or competent manner, the Hospitals have been damaged in an amount to be proven at the time of trial.

///

///

///

///

///

## TENTH CAUSE OF ACTION

## BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

## (AS TO THE COVENTRY DEFENDANTS AND DOES 1-10)

101.   The Hospital re-alleges and incorporates by reference the prior paragraphs above.

102.   In addition to the duties imposed on contracting parties by the express terms of their agreement, the law implies in every contract a covenant of good faith and fair dealing.  The implied promise requires each contracting party to refrain from doing anything to injure the right of the other to receive the benefits of the Agreement.

103.   At the time the Patient was admitted to the Hospital, the Agreement between the Hospital and Coventry Defendants were in place and the Coventry Defendants were obligated to act in accordance with the terms of the Agreement.

104.   The Hospital performed all of its duties under the Agreement.

105.   By entering into the Agreement with the Hospital, the Coventry Defendants had made implied promises of good faith and fair dealing with regards to the Agreement.

106.   The Hospital is informed and believes the Coventry Defendants violated the duty to act fairly and in good faith by failing to take steps to ensure that Ennis abide by the terms of the Agreement, in breach of the Agreement.

///

107.  As a result of Coventry Defendants' breach of the implied covenant of good faith and fair dealing, the Hospital has been damaged in an amount to be proven at trial.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff TWIN CITIES COMMUNITY HOSPITAL, INC. prays for relief as to the Patient:

1.   For damages in an amount according to proof at trial;

2.   For pre-judgment interest as provided by law;

3.   For punitive damages as provided by law;

4.   For attorneys fees as provided for by the contract and by law;

5.   For costs of suit herein incurred; and

6.   For such other and further relief as the Court deems just and proper.

DATED:  April 8, 2011

HELTON LAW GROUP
A Professional Corporation

By: _____
CARRIE S. MCLAIN
KELLY A. MAHONEY
Attorneys for Plaintiff
TWIN CITIES COMMUNITY
HOSPITAL, INC.

FIRST AMENDED COMPLAINT FOR DAMAGES

## PROOF OF SERVICE
*This document is printed on recycled paper*

### STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 401 E. Ocean Boulevard, Suite 1010, Long Beach, California 90802.

On April 8, 2011, I served the foregoing document described as **FIRST AMENDED COMPLAINT FOR DAMAGES FOR BREACH OF WRITTEN CONTRACT AS TO ENNIS, BREACH OF IMPLIED CONTRACT, BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING AS TO ENNIS, NEGLIGENT MISREPRESENTATION, QUANTUM MERUIT, ACCOUNT STATED, NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS, ECONOMIC INTERFERENCE – INDUCING BREACH OF CONTRACT, BREACH OF WRITTEN CONTRACT AS TO COVENTRY DEFENDANTS BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING AS TO COVENTRY DEFENDANTS** as follows:

| | |
|---|---|
| Derek Davis, Esq. | Attorney for Defendant, |
| Carol A. Treasure, Esq. | Ennis, Inc., Group & Pension and |
| Cooper & Sculley, P.C. | ELAP, INC. |
| 100 California St., STE 850 | |
| San Francisco, CA 94111 | |

X      **BY MAIL**
I caused such envelope to be deposited in the mail at Long Beach, California. The envelope was mailed with postage thereon fully prepaid.

I am "readily familiar" with this firm's practice of collection and processing correspondence for mailing. It is deposited with the U.S. Postal Service on the same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

Executed on April 8, 2011, at Long Beach, California.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

MARISA N. PITTS